[Civil No. 4220. Filed November 18, 1940.]

[107 Pac. (2d) 198.]

ALICE I. BANKHEAD, Appellant, v. CHARLES RAYMOND HOWE, AMOS A. BETTS, WILLIAM M. COX, LOREN VAUGHN, JOHN CUMMARD, WILSON T. WRIGHT, PACIFIC INDEMNITY COMPANY, a Corporation, MASSACHUSETTS BONDING AND INSURANCE COMPANY, a Corporation, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Corporation, AMERICAN SURETY COMPANY, a Corporation, GLOBE INDEMNITY COMPANY, a Corporation, and THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, a Corporation, Appellees.

Messrs, Struckmeyer & Flynn and Mr. H. S. Mc-Cluskey, for Appellant.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellees William M. Cox, Charles Raymond Howe, Fidelity and Deposit Company of Maryland and Pacific Indemnity Company.

Messrs. Silverthorne & Silverthorne, for Appellee Fidelity and Deposit Company of Maryland.

Messrs Rawlins & Rawlins and Mr. Arthur M. Davis, for Appellees John Cummard and Globe Indemnity Company.

Messrs. Townsend, Jenckes & Wildman, for Appellees Loren Vaughn and American Surety Company.

Mr. Riney B. Salmon, for Appellees Wilson T. Wright and Fidelity and Casualty Company of New York.

Mr. Forrest A. Betts of Los Angeles, California, and Mr. Henderson Stockton, for Appellees Amos A. Betts

and Massachusetts Bonding and Insurance Company and Fidelity and Deposit Company of Maryland.

Mr. Joe Conway, Attorney General, and Mr. Charles Bernstein, Assistant Attorney General, for Appellees Amos A. Betts, William M. Cox, Charles Raymond Howe, Loren L. Vaughn, John Cummard and Wilson T. Wright.

LOCKWOOD, J.—Alice I. Bankhead, hereinafter called plaintiff, brought suit against Charles Raymond Howe, Amos A. Betts, William M. Cox, Loren Vaughn, John Cummard and Wilson T. Wright, hereinafter called defendants, and various corporations which from time to time were sureties for defendants in their official capacities as members of the Corporation Commission of the State of Arizona, hereinafter called the commission. Defendants demurred to the complaint on several grounds, among them being that there was a defect of parties defendant and misjoinder of parties defendant, and that the causes of action set up in the complaint were barred by the statutes of limitation. The court sustained the demurrers on both grounds and allowed twenty days to amend, and plaintiff electing to stand upon her complaint, judgment was rendered in favor of defendants, whereupon this appeal was taken.

■ The question before us is whether either of the two demurrers was properly sustained, and in considering that we must, for the purpose of the demurrers only, assume that all the allegations of the complaint, which was filed December 21, 1938, are true. It is lengthy and we summarize it, so far as is necessary for the purpose of this opinion, as follows: The various defendants were members of the commission at various times from January 1, 1929, to December 31, 1938. They did not all serve at the same time, the

commission at one time being composed of one group, and at others of a different group of the defendants. The various surety companies were the sureties on the official bonds of the different commissioners from time to time, and one of the commissioners had a different bondsman from 1929 to 1934 from the one which he had from 1937 to and including 1938.

The Union Reserve Life Insurance Company, hereinafter called the company, was a life insurance company which was organized under the laws of Arizona prior to October 5, 1933, and commenced to do business in Arizona, under a certificate of authority issued by the commission during the year 1933, which authorized it to issue and make contracts of life, accident, sickness and health insurance. This certificate was annually renewed until March 4, 1938, at which time suit was brought to declare the company insolvent, and it was so declared, and its assets passed into the possession of the commission for liquidation. On July 17, 1933, the company issued a policy of insurance upon the life of Nathan Bankhead, husband of plaintiff, in the sum of $20,000, and premiums were annually paid out of the community funds of plaintiff and the insured until December 28, 1937, when he died. Plaintiff then filed her claim and proof of death with the company, but the policy was never paid, the company shortly after being declared insolvent. From its beginning, and at all times subsequent thereto, the company had never done certain things which the law of Arizona required it to do before it was permitted to do business in said state. The complaint then continues:

"That at all times herein mentioned said facts and conditions and the details thereof should and would have been known by said respective defendants named as members of said Arizona Corporation Commission during their respective terms of office by the exercise of reasonable care and diligence, and in the perform-

ance of their official duties required of them by law;
. . .

"That notwithstanding the foregoing facts, the said
defendants, Charles R. Howe, Amos A. Betts and
Loren Vaughn, . . . during their said respective terms
of office, permitted said Union Reserve Life Insurance
Company to write contracts of insurance in Arizona,
and acting as aforesaid issued to said insurance com-
pany a certificate of authority of said Arizona Cor-
poration Commission, certifying that said Union Re-
serve Life Insurance Company had complied with the
laws of Arizona and was authorized to transact the
business of issuing contracts of life insurance, . . .
That said defendants, during their respective terms of
office, continued said certificate of authority in full
force and effect and annually renewed the same. . . .
That said defendants during their respective terms of
office made annual reports in writing and transmitted
the same to the Legislature of Arizona, and . . . in
said reports represented to the legislature and to the
public that the said Union Reserve Life Insurance
Company . . . had complied with the laws of Arizona,
and that said insurance company was solvent. That
said defendants, at all times herein mentioned, con-
cealed from the legislature and from the public the fact
that said Union Reserve Life Insurance Company was
from its beginning unlawfully engaged in writing con-
tracts of insurance as aforesaid, and that said certifi-
cate of authority had been unlawfully issued by said
defendants. That said defendants wilfully and un-
lawfully failed to preserve a complete record of the
proceedings of said Commission and of their respec-
tive acts and omissions as members of said Commis-
sion, showing the result of the examinations and in-
vestigations of said Union Reserve Life Insurance
Company made by said defendants or pursuant to their
order, and at all times herein mentioned, said defend-
ants concealed from the Legislature and from the pub-
lic and from this plaintiff that said Union Reserve Life
Insurance Company was . . . insolvent as aforesaid,
. . . "

The allegation was further made that defendants Cox, Cummard and Wright

" . . . during their respective terms of office, permitted said Union Reserve Life Insurance Company to continue to write contracts of insurance in Arizona as aforesaid. That said defendants during their respective terms of office approved, ratified, adopted and confirmed the acts and omissions described in the foregoing paragraph of the defendants, Charles R. Howe, Amos A. Betts and Loren Vaughn, . . . that said defendants during their respective terms of office continued said certificate of authority in full force and effect and annually renewed the same on the first day of April of each year during their respective terms of office. That said defendants, during their respective terms of office, made annual reports in writing . . . to the legislature of Arizona, . . . and in said reports represented to the legislature and to the public that the said Union Reserve Life Insurance Company . . . had complied with the laws of the State of Arizona, and that said insurance company was solvent. . . . "

It further alleged concealment and failure to keep records on the part of these last-named defendants, in the same manner as contained in the allegations as to Howe, Vaughn and Betts, above set forth. It was further alleged that Nathan Bankhead and the plaintiff would not have purchased the policy of insurance referred to if they had knowledge of the true condition of the company, but would have purchased insurance with a solvent company lawfully authorized to do business in Arizona, and that they had no knowledge of such condition but relied upon the acts of the defendants aforesaid in licensing the company as an assurance that it was solvent.

A second cause of action on an assigned claim of Grace French set up substantially the same allegations.

We have held, in the case of *Button* v. *Nevin*, 44 Ariz. 247, 36 Pac. (2d) 568, that a state superintendent

of banks who wilfully and knowingly neglects or fails to perform his official duties is liable upon his bond for any damages suffered to parties through such neglect and failure, and that when he allows a bank to engage in business without having fulfilled the conditions specifically required by law, he and his bondsmen are liable for damages to any private parties sustained through the subsequent insolvency of the bank. We think, in reason, the same rule applies if the officers charged with the supervision of insurance companies permit them to engage in the business of selling insurance in Arizona when such officers know, or with reasonable diligence in the discharge of their official duties should have known, that the companies have failed to comply with the specific prerequisites set up by the law as a condition to their engaging in business.

 No insurance corporation may do business in Arizona unless a certificate of authority is issued it by the commission, and the latter must be satisfied by examination, before the certificate issues, that the company is duly qualified under the laws of the state to do business therein. Secs. 1783 and 1785, Rev. Code 1928. There are certain prerequisites which the insurance company must comply with before a permit is issued. Sec. 1776, Rev. Code 1928. It is the duty of the commission to report annually to the legislature the condition of insurance companies, and their certificates must be renewed annually on the first day of April of each year in order that they may continue in business. Secs. 1785 and 1797, Rev. Code 1928. If therefore, the commissioners, knowing that an insurance company has not complied with the law, permit it to enter into business in the state of Arizona, or continue to do business thereafter, we think they are liable on their official bonds to any parties who may show legal injuries by reason of their conduct. Secs. 74 and 75, Rev. Code 1928. Not only are they liable if they have actual

knowledge of the condition, but they are liable if they negligently fail to perform the duties imposed on them of making a proper investigation, and by reason of such negligence fail to discover the true condition of the company. Whether the liability be individual or as a commission we do not now decide. It is upon this theory, obviously, that plaintiff brought her action.

It will be noted, however, that she joined therein not only the commissioners who issued the original certificate, but also others who were not in office at the time it was issued, basing her action against them on the ground that by each renewal of the certificate they had adopted the tort of their predecessors, and were equally responsible therefor.

■ Defendants claim that there was a misjoinder of causes of action and defendants, in that under the pleadings the commissioners who were not in office at the time the original certificate was issued could not be responsible for anything done by virtue of its issuance, while those who had ceased to hold office could not be responsible for any renewal of the certificate thereafter. If the original issuance of the certificate and the various renewals thereof were separate torts, it is obvious that the contention of defendants is true, for certainly under the practice existing up to the adoption of the new rules of civil procedure, effective January 1, 1940, separate torts committed by different defendants could not be joined in the same action. It is true that under rules 20 and 21 of the new rules the joinder of all of these defendants would have been proper, but the case was determined by the trial court before these rules went into effect, and we, of course, must consider its action under the law as it existed at that time.

■■ Plaintiff evidently recognizes her dilemma, for her counsel have attempted in their brief, and in

oral argument before the court, to urge that the parties may be properly joined under the facts set up in the complaint, upon the theory of a conspiracy. It is, of course, true that if a conspiracy to commit a series of illegal acts, each one of which may give rise to a separate action, be alleged, all of the parties to the conspiracy may be joined in one action, but the complaint, in that case, must set up facts showing that there was a joint conspiracy which reasonably contemplated the series of acts, though each conspirator need not have actually taken part in the commission of each particular act in the series. We have examined the complaint with care and are satisfied that the factual allegations thereof not only do not set up a conspiracy but they affirmatively negative the idea of a conspiracy embracing all of the defendants. Defendant Vaughn ceased to be a member of the commission on January 10, 1933. So far as the complaint shows the original license was not issued by the commission until after Vaughn had left office. Defendant Cummard's term expired December 31, 1934. Defendant Cox was not a member of the commission until some years after the original permit was issued.

Since the complaint does not allege sufficiently a continuing conspiracy not only to issue the first permit, but to renew it from year to year, and that all of the defendants had participated in the original conspiracy, and not merely in some of the acts done long afterwards, there was an improper joinder both of causes of action and of defendants. Such being the case, under the practice obtaining at the time, the trial court necessarily sustained the demurrer on the ground there was an improper joinder of defendants and causes of action.

It is urged by plaintiff that the proper procedure would have been to dismiss the action as to the defendants improperly joined, allowing it to stand as

against those who were proper parties. If plaintiff had taken this course by a motion to dismiss, a very different situation would have arisen, but she declined to do this, and stood upon her complaint against all the parties. There was nothing left, under those circumstances, but for the court to render judgment in favor of the defendants.

Since the demurrer was properly sustained on the ground of misjoinder and judgment rendered thereafter, it is unnecessary for us to consider the effect of the statutes of limitation and the other questions raised by the briefs not discussed herein. We expressly reserve them.

The judgment of the lower court is affirmed.

ROSS, C. J., and McALISTER, J., concur.