518 P.2d 582

Elizabeth **DELAROSA**, surviving widow of Cristobal Santiago Delarosa, Deceased, and as mother and next best friend of Santiago Kim Delarosa, Maria Elena Delarosa, Victor Delarosa and Angila Annette Delarosa, as surviving children of Cristobal Santiago Delarosa, Deceased; Amada Cristo, surviving parent of Joe Cristo, Deceased, and Amada Cristo, administrator of the Estate of Joe Cristo, Deceased, Appellants,

v.

The **STATE** of Arizona, Arizona State Highway Department, Motor Vehicle Division; and B. F. Nolan, as agent for the State of Arizona, Appellees.

No. 2 CA–CIV 1420.

Court of Appeals of Arizona, Division 2.

Jan. 31, 1974.

Rehearing Denied March 4, 1974.
Review Denied March 26, 1974.

264

Bernard I. Rabinovitz, Tucson, for appellants Cristo.

Kali & Allen, P. C. by Kenneth L. Allen, Tucson, for appellants Delarosa.

Everett, Bury & Moeller, P. C. by J. Michael Moeller and Leonard Everett, Tucson, for appellees.

## OPINION

HATHAWAY, Chief Judge.

Appellants filed wrongful death actions against the appellees alleging a violation of duty to the decedents in failing to discover a defective emergency brake on a school bus which was allegedly permitted to come into the State of Arizona without proper inspection and for failure to maintain a safe highway. The bus was apparently parked on a shoulder of Interstate 10, about 3.3 miles from the inspection station at San Simon where the vehicle entered Arizona, when it rolled into the travelled portion of the highway causing the collision out of which the wrongful death actions arose. This appeal challenges the direction of a verdict against the appellants and the denial of their motion for a new trial.

Appellants contend that there was a duty to inspect for safety defects on vehicles issued a single trip permit pursuant to Arizona statutes.[1] This failure of inspection,

---

1. A.R.S. § 28–501.01 provides:
    "(A) If it is desired to operate any commercial vehicle referred to in subsection A of § 28–501 for a single trip . . . and the vehicle is duly registered and licensed under the laws of any other state or country, the owner may make application to the motor vehicle division for a single-trip permit authorizing the interstate operation of such vehicle for a single trip through the state. . . . "

they contend, resulted in a motor vehicle without emergency brakes gaining access to the state highways.

■ Assuming arguendo a duty to inspect the safety equipment, which we do not decide, and laying aside any questions of proximate cause of the collision, we conclude that appellants cannot prevail in a suit based on such duty to inspect. For liability to attach, the duty owed must extend beyond the general public and to a particular individual. Massengill v. Yuma County, 104 Ariz. 518, 456 P.2d 376 (1969). In Duran v. City of Tucson, 20 Ariz.App. 22, 509 P.2d 1059 (1973), we attempted to reconcile *Massengill* with Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963) [imposing liability for failure to properly maintain the highway by removing old and misleading directional signs where an old highway and a new highway intersected]. We concluded that governmental tort liability may be based upon the provision ". . . of the services or facilities for the direct use by members of the public . . . contrasted with the provision of a governmental service to protect the public generally from external hazards." (20 Ariz.App. at 25, 509 P.2d at 1062). In *Duran* we found that the city's duty to inspect premises to enforce its counterpart of the Uniform Fire Protection Code was a duty owed to the public and not a duty owed to an individual.

■ The alleged duty in the instant case would be directed to reveal safety defects in vehicles and to prevent their entering the state in such condition. Applying the *Duran* test, we find that the state activity complained of would have been directed to protection of the general public from the external hazard of unsafe vehicles coming into the state, and would not ordinarily impose liability upon the state to an individual for violation of such duty.

■ Appellants contend that the State of Arizona owed the decedents, as travelers on Arizona's highways, the duty of keeping its highways safe, arguing that the state violated that duty. Stone v. Arizona Highway Commission, supra. Our Supreme Court enunciated in County of Pima v. Southern Pacific Co., 95 Ariz. 41, 44, 386 P.2d 400, 402 (1963):

> "Arizona owes its citizens the duty of providing safe and convenient highways."

See also Arizona State Highway Dept. v. Bechtold, 105 Ariz. 125, 460 P.2d 179 (1969) (post-*Massengill*), and State ex rel. Berger v. Cantor, 13 Ariz.App. 555, 479 P.2d 432 (1970). The standard of care owed by the state is the same as that owed by a municipality, State v. Watson, 7 Ariz.App. 81, 436 P.2d 175 (1967). An early case, City of Phoenix v. Clem, 28 Ariz. 315, 327, 237 P. 168, 172 (1925), sets forth the following standard:

> "The standard of care imposed upon a municipality is that of an ordinarily prudent man. It is bound to keep its streets reasonably safe for travel, but it is not an insurer of those who travel thereon. . . . (T)he rule is that the city must have actual notice of a defect, or the defect must have existed a sufficient length of time to imply notice, before it is guilty of actionable negligence . . . . It is not entitled to notice of a dangerous condition that it has created or caused to be created. . . ."

■ The state's liability is not limited to defects created by the state, but includes dangerous conditions permitted by it to continue in existence. Walker v. County of Coconino, 12 Ariz.App. 547, 473 P.2d 472 (1970). In considering an icy roadways problem, Division One of this court stated:

> "We realize that *Clem* involves a defect in the roadbed itself but we can discern

A.R.S. § 28–303(E) provides:
"A foreign vehicle, before it may be registered in this state, shall be *examined and inspected* by the vehicle division . . . including examination and inspection to es-

tablish compliance with § 28–955. . . ."
(Emphasis added)
A.R.S. § 28–955 deals with state requirements on mufflers and ignition controls.

no reason for not applying the same principle to any danger on a road . . . . Thus, if a roadway should suddenly and without fault of the governmental body, come *by any means* into a condition dangerous to travel, the governmental body is liable for damages occasioned thereby if the governmental body fails to act in a reasonably prudent manner under the circumstances." (12 Ariz.App. at 550, 473 P.2d at 475).

Appellants quote from Smoak v. Charleston County, 128 S.C. 379, 122 S.E. 862 (1924), where the governmental agency was held liable for a truck upon the highway because it constituted a defective or dangerous condition:

"If the obstruction should be placed by a person other than the county authorities, and he should exceed the limit of permission, his liability would not absolve the county authorities, if they were advised of such condition, or with the exercise of ordinary care would have ascertained it. A permissible, temporary obstruction becomes an unlawful obstruction when it has been allowed to remain longer than a reasonable time for its removal or without the necessary precautions. At that point the duty of the county authorities to remove it or guard against its consequences begins, as it exists in reference to all other defects. We know of no law which would excuse a county upon the ground that it did not know of a defect, when it appears that proper diligence would have discovered it." (122 S.E. at 863).

We subscribe to the views expressed in the foregoing quote, but do not agree that the record here demonstrates that the state violated its duty. Appellants attempt to show a breach of duty by pointing up certain facts which we have carefully considered. They begin by noting that the bus was observed parked on the "rumble rock" portion of I–10 some 3.3 miles west of the inspection station by Larry Areingdale, a state agricultural inspector, who worked at

that station. He did not mention seeing the bus to anyone. He testified that he was aware that

". . . this was the same bus which he had seen having mechanical problems earlier that evening at the inspection station."

(The mechanical trouble adverted to was difficulty in starting the bus). The bus did not appear to him to present a hazard since it was not in the travelled portion of the highway. He passed it while traveling in the outside lane and did not have to swerve to get around it.

Officer Sabin of the Arizona Highway Patrol, patrolled a 39 mile stretch of I–10 including the portion where the bus was found. Although he patrolled that stretch from 5 p. m., December 18th, until 2 a. m., December 19th, he did not see the bus. No highway patrolman covered this stretch of highway between 2 a. m. and 6 a. m. The decedents were killed at approximately 4 a. m. when the vehicle in which they were traveling collided with an unlighted school bus in the inside westbound lane. Investigating officers expressed the opinion that the bus was rolling backwards in an easterly direction at approximately 2 to 3 miles per hour at the time of collision and that had it not collided but continued rolling, it would have wound up in the median.

Appellants contend that the State Highway Patrol is required by statute to patrol the highways of the state both day and night, and if this had been done, the bus parked along the highway would have been discovered and should have been removed. In connection with this argument, we are referred to the following two statutory provisions:

"§ 41–1743 Duties of highway patrol

The highway patrol shall patrol the highways of the state, both day and night, and enforce the laws of the state . . . ."

"§ 28–872 Officers authorized to remove illegally stopped vehicles

\* \* \* \* \* \*

C. Any police officer is authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway:

\* \* \* \* \* \*

4. When any vehicle is left unattended for more than 4 hours upon the right-of-way of any freeway which has full control of access and no crossings at grade."

We are constrained to agree with the trial court that there is no evidence that the state negligently permitted the bus to obstruct the road. When it was last seen, prior to the accident, it was parked in the emergency parking lane, out of the travelled portion of the highway. The evidence indicates that it was rolling into the travelled portion of the highway at the time of the collision. In no manner does the evidence indicate that the bus had been on the travelled portion of the highway for any significant time. Actual notice of the existence is not shown, nor do the facts support a conclusion of constructive notice. McGuire v. Valley National Bank of Phoenix, 94 Ariz. 50, 381 P.2d 588 (1963); Walker v. Montgomery Ward & Company, Inc., 20 Ariz.App. 255, 511 P.2d 699 (1973).

Appellants argue that a jury could reasonably conclude that a bus parked upon the untravelled shoulder of the highway caused an unreasonably dangerous condition which should have been remedied in the exercise of due care. The testimony indicated that the slope upon which the bus was parked was only 1.23 degrees. We are of the opinion that a bus parked upon the untravelled portion of the highway on a nearly level stretch does not create an unreasonably dangerous condition.

The statute authorizing the removal of vehicles from the highway right-of-way after they have been left there unattended for more than 4 hours cannot be translated into a duty imposed upon the state to remove such vehicles at that time. The statute is obviously designed to pre-vent an accumulation of abandoned vehicles along the right-of-way.

Since we find no error in the trial court's direction of a verdict in favor of the state, the judgment is affirmed.

KRUCKER and HOWARD, JJ., concur.