571 P.2d 1057

**Edmund WESLEY, Appellant,**

v.

**STATE of Arizona, Appellee.**

**No. 1 CA–CIV 3369.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 4, 1977.

Rehearing Denied Nov. 9, 1977.

Review Denied Dec. 6, 1977.

Marks, Shea & Wilks by Philip J. Shea, Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen. by Jones, Teilborg, Sanders, Haga & Parks, P. C. by Terrence P. Woods, Phoenix, for appellee.

## OPINION

FROEB, Chief Judge.

The complaint in this action states that Vernon Wesley was killed by gunfire at the Roadside Bar located on U. S. 70 immediately east of the San Carlos Apache Indian Reservation in Graham County. Edmund Wesley, Vernon Wesley's father, brought this wrongful death action against the State of Arizona for the Department of Liquor Licenses and Control's failure to revoke or suspend the license of the bar when it had official information of violence taking place at the bar on various occasions prior to the shooting.

Based upon the pleadings, the trial court granted the State's motion for summary judgment. In view of this it is appropriate that we elaborate upon the allegations of the complaint. It alleges that Vernon Wesley was shot and killed by Donald Eugene Mayfield at the Roadside Bar on March 16, 1974. It appears that Mayfield operated the bar but that the licensee was John L. Roberds. The complaint recites a history of incidents involving both Mayfield and Roberds. It states that Roberds shot Delbert Key on March 15, 1972; broke Rosene Stanley's arm on November 21, 1972; broke Arthur Longstreet's arm on October 25, 1972; broke Don Goseyun's arm on November 5, 1972, all such incidents apparently occurring on the bar premises. It also states that Mayfield threatened several people on September 21, 1973; beat up Steve Craig on November 1, 1973; shot Irving Bush on November 3, 1973 and conducted illegal pawning and credit activities. It alleges that the incidents were reported to

the Liquor Department but that the only action taken was that the Liquor Department fined Roberds, the licensee, $200 for failure to report the incidents in which he was involved. The complaint alleges that the Liquor Department was guilty of malfeasance because it did not take action to revoke the license and close the bar. There is also an allegation that the Department failed to act "because it applied a different standard of conduct to bars which serve reservation Indians than it applies to bars that operate in a middle-class urban environment." The complaint then alleges that "the maintenance of this double standard constituted malfeasance which directly resulted in Vernon Wesley's death."

The issue in the case is whether the State, through the Liquor Department, owed a legal duty to Vernon Wesley. We hold that it did not and that the trial court correctly granted summary judgment for the State.

The abrogation of sovereign immunity in *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963) opened the way to tort liability against the State and its instrumentalities. Nevertheless, the removal of the defense of sovereign immunity did not create any new liability for a public body. *Barnum v. Rural Fire Protection Company*, 24 Ariz.App. 233, 537 P.2d 618 (1975). Liability to an individual for damages will not arise where the public body owes a duty to the general public as a whole unless it is shown that it owes a specific duty to the individual. *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969).

> Simply stated, there are situations where a government, or agency thereof, can by its conduct, narrow an obligation owing to the general public into a special duty to an individual, for the breach of which it is responsive in damages. *Id.* at 523, 456 P.2d at 381.

This rule has been explained and applied during recent years in *Duran v. City of Tucson*, 20 Ariz.App. 22, 509 P.2d 1059 (1973); *Delarosa v. State*, 21 Ariz.App. 263, 518 P.2d 582 (1974); and *Ivicevic v. City of Glendale*, 26 Ariz.App. 460, 549 P.2d 240 (1976). Most recently the Arizona Supreme Court reaffirmed the doctrine of the *Massengill* case in *Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977) which we will later discuss and distinguish.

Can it be said under the facts of this case that the Liquor Department owed a duty to protect from harm the unfortunate victim of the shooting? We think not. At most the Liquor Department owed a duty to the general public to investigate license violations occurring on the premises of a licensee and, where appropriate, to suspend or revoke the license or impose authorized sanctions. *See* A.R.S. § 4–210. The decision to suspend or revoke a license for violation of the law is quasi-judicial and is based upon the exercise of discretion. *Cf. Him Poy Lim v. Duncan*, 65 Ariz. 370, 181 P.2d 357 (1947). In other words, the enforcement of liquor laws and regulations is not unlike law enforcement generally and is thus not subject to mandamus by a court for its performance. *Cf. State ex rel. Arizona State Board of Pardons and Paroles v. Superior Court*, 12 Ariz.App. 77, 467 P.2d 917 (1970) and *City of Phoenix v. Superior Court*, 6 Ariz.App. 327, 432 P.2d 471 (1967).

The duty, then, to patrol liquor licenses is certainly no greater than the duty of the sheriff in *Massengill* to enforce laws relating to the operation of motor vehicles. In both instances the duty is to the general public and is not narrowed to an innocent victim damaged by the act of a violator.

We do not think that *Grimm v. Arizona Board of Pardons and Paroles* requires a different conclusion. Ironically the innocent victim there also died in a bar shooting after he was attacked by a dangerous parolee from the Arizona State Prison. In the suit against the Parole Board, the Arizona Supreme Court removed the absolute immunity to suit surrounding public officials in their discretionary functions and replaced it with a qualified immunity, thus opening the way to liability where certain proofs have been met. We do not reach

that issue here because of the threshold consideration of public versus individual duty.

In *Grimm,* the Supreme Court held that the release of the prisoner on parole by the Parole Board narrowed the public duty of the Parole Board to the victim of the shooting. We are concerned in this case with a different factual situation. As stated by the Supreme Court in *Grimm* :

The Board of Pardons and Paroles in this instance has narrowed its duty from one owed to the general public to one owed to individuals by assuming parole supervision over, or taking charge of, a person having dangerous tendencies. (See, § 319 of the Restatement, Second of Torts discussed *infra.*) This situation can be distinguished from that in *Massengill* where the public officials merely failed to act or take charge of the automobile drivers who later caused injury and death to the plaintiffs. Here the Board members voluntarily assumed responsibility for a highly dangerous person who could be paroled only by Board action. It is black letter tort law that while inaction is not normally a basis for liability, negligent performance of a duty voluntarily undertaken may be a basis for liability. 115 Ariz. at 267, 564 P.2d at 1234.

The present factual situation is clearly outside the *Grimm* holding as to narrowed duty because the Liquor Board took no action and assumed no responsibility. Indeed, the inaction of the Board is the gist of Wesley's claim. We conclude, therefore, that *Grimm* is not controlling.

Appellant also argues that he was denied equal protection of the law because the State applies a different standard of conduct in enforcing liquor license laws and regulations to bars which serve reservation Indians than it applies to bars in other areas of the State. From this he argues that his complaint states an actionable claim against the State for damages. In support of this he refers us to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *VonderAhe v.*

*Howland,* 508 F.2d 364 (9th Cir. 1975); *States Marine Lines, Inc. v. Schultz,* 498 F.2d 1146 (4th Cir. 1974); and *United States ex rel. Moore v. Koelzer,* 457 F.2d 892 (3d Cir. 1972). These cases are inapplicable to the present situation because in each instance they involved interference by government officials with constitutional rights of specific individuals. In the present case the assumed unequal enforcement action by the State, if true, is so remotely related to the shooting victim that it cannot be said that individual constitutional rights were affected.

For the reasons stated, the judgment of the trial court is affirmed.

NELSON, P. J., and HAIRE, J., concur.