595 P.2d 157

Rose M. BAGLEY, surviving spouse of
Russell Grant Bagley,
Deceased, Appellant,

v.

The STATE of Arizona, Appellee.

No. 13603.

Supreme Court of Arizona,
In Division.

April 5, 1979.

Verity, Smith, Lacy, Allen & Kearns by Kenneth L. Allen, and Bruce F. Rinaldi, Tucson, for appellant.

Jones, Teilborg, Sanders, Haga & Parks by Robert J. Bruno and William R. Jones, Jr., Phoenix, for appellee.

HOLOHAN, Justice.

The appellant, the surviving spouse of Russell Grant Bagley, filed a wrongful death action against the State of Arizona and a number of other defendants. The state's motion for summary judgment was granted by the trial court, and a final judgment in favor of the state was entered. Appellant filed a timely appeal. This court has jurisdiction pursuant to 17A A.R.S. Rules of Civil Appellate Procedure, rule 19(e). We affirm the decision of the trial court.

Appellant's husband, Russell Grant Bagley, was killed when the Lone Star Mine caved in on January 11, 1974. About a week earlier, on January 3, 1974, the state mine inspector had ordered the mine closed for failure to comply with safety standards. That order was still in effect on January 11.

The first count of appellant's action against the state alleged that the state, acting through the Arizona State Mine Inspection Department, was negligent in failing to prevent her husband's death. Specifically, appellant alleged that the state failed to inspect properly, failed to safeguard against potential hazards, failed to post warning signs, failed to close the mine, failed to warn her husband of the dangerous condition, and failed to enforce state

and federal orders and laws related to the safety of the mine. In a separate count, appellant reiterated the same facts, alleging them to be gross, wilful and wanton negligence.

The state's motion for summary judgment was supported by the affidavit of the state mine inspector which stated: That the mine in question was inspected by deputy mine inspectors on January 3, 1974; that pursuant to the findings of the inspection the state mine inspector ordered the mine closed until the required repairs could be made; and that all mining operations were ordered ceased. The order closing the mine was in full force and effect on January 11, 1974. Appellant did not respond with opposing affidavits.

■ Ever since this court's decision to abolish the doctrine of governmental immunity, *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963), the courts have been troubled with the problem of where government's liability begins and ends. Each case that this court has decided since *Stone, supra*, has added another facet to the intricate and sometimes confusing case law defining the limits of governmental liability. *See Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977); *Arizona State Highway Dept. v. Bechtold*, 105 Ariz. 125, 460 P.2d 179 (1969); *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969); *Patterson v. City of Phoenix*, 103 Ariz. 64, 436 P.2d 613 (1968); *Veach v. City of Phoenix*, 102 Ariz. 195, 427 P.2d 335 (1967); *Besserman v. Town of Paradise Valley, Inc.*, 116 Ariz. 471, 569 P.2d 1369 (App.1977); *Ivicevic v. City of Glendale*, 26 Ariz.App. 460, 549 P.2d 240 (1976); *Duran v. City of Tucson*, 20 Ariz. App. 22, 509 P.2d 1059 (1973). Throughout those cases one rule consistently recurs. As in any tort claim, the first question to be resolved is whether the defendant owes a duty to the plaintiff.

Here, in contrast to many prior cases, the duties and powers of the state mine inspector are stated fairly explicitly in the statutes. Beginning with A.R.S. § 27–302 which places enforcement authority with the mine inspector through the rest of the chapter, the duties and responsibilities of the mine inspector are detailed.

A.R.S. § 27–307 requires the inspector to inspect for dangerous conditions, and to notify the mine operator of any findings of danger. The statute also gives the mine inspector authority to order the cessation of mine operations for noncompliance with safety regulations. This latter provision is further enforced by A.R.S. § 27–307(B) which makes the notice of the mine inspector prima facie evidence of negligence by the mine operator for injuries suffered by employees subsequent to the notice of dangerous condition. A.R.S. § 27–302(C) makes violation of any provision of the chapter an offense.

■ The appellant argues that the state mine inspector had a legal duty to close the mine due to its dangerous condition or at least to post signs warning that the mine was dangerous and had been ordered closed. Appellant seems to overlook the fact that the statutes governing mining operations, A.R.S. § 27–301 et seq., do not grant the mine inspector the authority to physically close a mine, nor do the statutes provide that he may post sign notices on the private property of the mine owner. As a practical matter either of these procedures might be a more prudent procedure to follow to enforce the findings of the mine inspector, but the legislature did not provide the mine inspector with such authority. The primary responsibility for the life, health and safety of mine employees was placed upon the mine operator. *See A.R.S. § 27–304.* It must be concluded that there was no statutory duty for the mine inspector to act as suggested by appellant. The record shows that the mine inspector complied with the requirements of the statutes.

■ Appellant contends that the statutes concerning mining operations are designed to protect the people employed in mines. The mine inspector has a duty, implied from the purpose of the statutes, to warn mine employees of dangerous conditions found by the mine inspector after an inspection of a mine.

At the outset we disagree with appellant's contention that the mine inspector has an implied duty to warn mine employees of dangerous conditions. As was noted earlier the statutory system calls for the mine inspector to give notice to the mine operator. A.R.S. § 27–307(A). The mine operator after being given notice of a dangerous condition must make the necessary change forthwith to bring the mine into a safe condition. A.R.S. § 27–307(B).

Although it may be that the underlying purpose of the mine inspection statutes is to protect those employed in the mines, it appears that the statutes provide a system to accomplish this purpose, and the record indicates that the mine inspector followed the statutes.

Appellant argues that the state by enacting a statute which benefits an identifiable segment of the public assumes a duty to the individual members of that group; further, the failure to perform that duty gives rise to a claim for relief by any individual within the group who may be injured by the negligent acts of the state. In support of this position appellant relies on *Veach v. City of Phoenix, supra*, and Restatement of Torts (Second) § 323.

The authorities cited by appellant are not applicable to the situation at issue. *Veach* involved the furnishing of a service which this court held had to be given impartially to all members of the public without discrimination. The cited section from the Restatement also involves the furnishing of services to another. We believe that the mine inspection statutes are more analogous to those types of governmental inspection such as fire and building inspections. These types of inspection, while often benefiting an identifiable group, are held to be statutes for the benefit of the public. *See Duran v. City of Tucson, supra*. In our view the mine safety statutes provided a duty which was owed to the public and not a duty to a particular individual.

The actions of the state mine inspector and his staff were performed in accordance with the requirements of statute. The duties required of the state mine inspector under the mine operation statutes were of a public nature, and no private duty to any specific individual was created. The granting of summary judgment by the trial court is affirmed.

CAMERON, C. J., and HAYS, J., concur.