599 P.2d 777

**The STATE of Arizona, The Arizona Corporation Commission, The Department of Insurance of the State of Arizona, et al., Petitioners,**

**v.**

**The SUPERIOR COURT OF MARICOPA COUNTY, The Honorable Philip W. Marquardt, Judge of the Superior Court of Maricopa, Richard Davis, et al., Respondents.**

No. 14231.

Supreme Court of Arizona, In Banc.

June 18, 1979.

Rehearing Denied Sept. 6, 1979.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Richard J. Woods, Henry L. Timmerman, Phoenix, for petitioners.

Wentworth & Lundin by John E. Lundin, Jack S. Emery, Phoenix, Kass, Goodkind, Wechsler & Labaton, New York City, for respondents.

GORDON, Justice:

Petitioners in this special action are the State of Arizona, the Arizona Department of Insurance, the Arizona Corporation Commission and their respective agents, officers and employees. They are the defendants in a class action entitled *Davis et al. v. the State of Arizona, et al.,* Cause No. C–336120, which is pending in the Maricopa County Superior Court. The plaintiffs in that action are depositors [1] of U.S. and Lincoln Thrift Associations.

In November of 1975, the Securities and Exchange Commission brought an action in Federal Court to appoint a receiver to ad-

---

1. The plaintiff's complaint, the petition for special action and the response to the petition for special action all refer to the plaintiffs as "depositors" in U.S. and Lincoln Thrift. Pursuant to A.R.S. § 44–2059, thrift companies are prohibited from receiving deposits or from issuing certificates of deposit. Instead, a thrift compa-

ny issues "investment certificates." A.R.S. § 44–2041.1. The plaintiffs, therefore, are not depositors but investors or purchasers of securities. However, because this opinion frequently cites allegations made by the parties, and because the parties refer to the plaintiffs as depositors, we too will do so.

minister the assets of U.S. and Lincoln Thrift Associations, hereinafter referred to as the Associations, and to enjoin Robert H. Fendler and others from committing further securities fraud or from dissipating the Associations' assets. A class action, on behalf of the depositors in the Associations, was filed in Federal Court against various officers, directors, employees and agents of the Associations.

In April of 1976, the depositors served the Arizona Corporation Commission, the Department of Insurance and the Attorney General with notice of a claim against the state and various state commissions and departments. A subsequent notice was also filed requesting allowance or disallowance of the claim before June 24, 1976. The claim asserted that the state and the various commissions and departments of the state fraudulently or negligently permitted the Associations to operate in Arizona, or that they aided and abetted the Associations in defrauding the plaintiffs. Because plaintiffs received no notice of the allowance or disallowance of their claim prior to the commencement of this action, it is deemed to have been disallowed prior to such commencement. The disallowance was subsequently confirmed by order of the Arizona Corporation Commission.

Plaintiffs have how filed a class action in Maricopa County Superior Court against the state and various state commissions and departments, on behalf of the depositors in the Associations. That complaint is the subject of this special action. The complaint states that the Associations raised over $52 million from approximately 20,000 class members of the public, primarily in the Phoenix and Tucson areas, and that the Associations and their subsidiaries and affiliates are now insolvent.

The complaint makes the following assertions about the Associations' business activities. The Associations promulgated an intensive advertising campaign in order to obtain new investors' funds to meet maturing obligations. The advertising stressed higher interest rates, the safety of the investment, and the fact that depositors were insured for up to $40,000 by Omaha Surety Corporation of America, hereinafter referred to as Omaha. The advertising and sales literature used by the Associations contained material misrepresentations and omissions and concealed the serious financial difficulties of both Associations and their subsidiaries and affiliates. The Associations used false and fraudulent financial statements in order to raise monies and to conceal their impaired financial condition. These statements were not prepared in accordance with generally accepted accounting principles or generally accepted auditing standards, nor did they fairly represent the financial condition of the Associations.

The complaint consists of five counts. Count I alleges that the Corporation Commission officer defendants, while acting within the scope of their actual or apparent authority, made untrue statements or omitted material facts and engaged in courses of business that operated as a fraud. Specifically, this count asserts that the defendants represented to the plaintiffs and others that the Associations were well regulated by the Arizona Corporation Commission; that the Associations and Omaha had made all "filings" required by law; that their corporate papers and insurance certificates were in order; and that they were in a solvent financial condition. Moreover, the defendants failed to make a yearly examination of the Associations as required by statute and failed to disclose that the Associations were in violation of several portions of 14 A.R.S., Title 44, Chapter 12, Article 17.

Count II alleges that the State of Arizona, the Arizona Corporation Commission, the Corporation Commissioner defendants, and the Corporation Commissioner officer defendants aided and abetted the Associations in defrauding the plaintiffs. Specifically, the defendants failed to examine the Associations on a yearly basis, as required by law, or failed to do so in accordance with standards required by law. Moreover, they failed to adequately examine the Associations' applications for registration and continued to issue investment certificates to

the Associations when they knew, or should have known, that they were in violation of numerous provisions of 14 A.R.S., Title 44, Chapter 12, Article 17. The defendants also failed to disclose that the Associations were not properly regulated by the Corporation Commission and failed to disclose that Omaha did not have sufficient assets to insure payments of its insured obligations.

Count III alleges that the State of Arizona, the Arizona Corporation Commission, the Corporation Commissioner defendants and the Corporation Commission officer defendants were negligent in performing their statutory duties. Specifically, the defendants failed to make a yearly examination of the Associations, or failed to do so in accordance with standards required by law. They failed to properly supervise and regulate the affairs and records of the Associations and permitted them to continue to issue investment certificates when the Associations were in violation of numerous provisions of 14 A.R.S., Title 44, Chapter 12, Article 17. Moreover, Count III alleges that the Director of the Securities Division and the other Corporation Commission officer defendants were personally involved in these violations and that they wilfully and knowingly acted in disregard of their statutory duties and were grossly negligent.

Count IV alleges that the State of Arizona, the Arizona Department of Insurance, the Insurance Director defendants and the Insurance Department officer defendants were negligent or reckless in supervising the affairs of Omaha. This count also alleges that these defendants aided and abetted the Associations in defrauding the plaintiffs, and that they made untrue statements or omitted material facts and engaged in a course of business that operated as a fraud. Specifically, the defendants failed to examine the affairs of Omaha in the manner and within the time prescribed by law. The examinations that were conducted were negligently or recklessly performed. Moreover, the defendants were in violation of their statutory duties when they renewed Omaha's certificate of authority. They also failed to disclose that Omaha did not have sufficient assets to insure payments of its insured obligations. Count IV further states that the Insurance Director defendants and the Insurance Department officer defendants were personally involved in these acts and that they wilfully and knowingly acted in disregard of their statutory duties.

Count V alleges that the surety defendants are jointly and severally liable upon their official bonds for the allegations made in Counts I through IV. Plaintiffs pray for a judgment requiring the defendants to pay themselves and the class they represent a sum equal to the damages they have sustained from the alleged acts and omissions.

The defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted, pursuant to 16 A.R.S., Rules of Civil Procedure, rule 12(b)(6). The trial court entered an order denying the motion, and the defendants have now petitioned this Court for relief through special action.

 To support the granting of a motion to dismiss for failure to state a claim upon which relief can be granted, it must be clear that the plaintiffs are not entitled to relief under any interpretation of the facts, which is susceptible of proof. *San Manuel Copper Corp. v. Redmond*, 8 Ariz.App. 214, 445 P.2d 162 (1968). Such a motion admits the truth of the facts alleged, for purposes of the motion, *Industrial Commission v. Superior Court*, 5 Ariz.App. 100, 423 P.2d 375 (1967), and merely contends that the plaintiffs are not entitled to relief under any legal theory. *See Mackey v. Spangler*, 81 Ariz. 113, 301 P.2d 1026 (1956).

 The trial court's denial of defendant's motion to dismiss was a non-appealable order. A.R.S. § 12–2101. Under some conditions it is appropriate to review such a non-appealable order by special action, when a portion of the complaint cannot be justified under any rule of law. *See Nataros v. Superior Court of Maricopa County*, 113 Ariz. 498, 557 P.2d 1055 (1976). The special conditions existing in this case that militate in favor of this Court accepting jurisdiction in a special action proceeding,

based on the existing status of the pleadings are: the sizable claims brought against the state and its officers and employees; the large number of injured depositors in defendant's association, and the costs and delays to all parties, which would occur under normal appellate procedures.

For these reasons we take jurisdiction pursuant to 17A A.R.S., Rules of Procedure for Special Actions, rule 1, and reverse the order of the trial court, which denied the motion to dismiss, as it applies to portions of Counts III, and V. The trial court is directed to dismiss these portions of the pleadings, with leave to amend. We affirm the trial court's denial of the motion to dismiss as it applies to all remaining portions of the complaint and remand those portions for proceedings not inconsistent with this opinion.

## COUNTS I AND II

Counts I and II allege that certain defendants, including the State of Arizona, the Arizona Corporation Commission and various of the latter's agents, officers and employees, are guilty of fraud and that they aided and abetted the Associations in perpetrating a fraud. Most of the acts that plaintiffs cite to support these counts are tantamount to violations by the defendants of their statutory duties. It is not alleged, however, that these violations *negligently* occurred.

Arizona discarded the concept of sovereign immunity for tort liability over fifteen years ago. *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963). Because Counts I and II are not based on a theory of negligence, a "public duty defense," as discussed in *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969), is inapplicable. We, therefore, need only determine if the pleadings in Counts I and II adequately state claims upon which relief can be granted.

Although neither Count I nor II specifically cites A.R.S. § 44–1991, the allegations in each are clearly based upon this statutory prohibition against fraudulent practices in connection with the sale of securities.

"§ 44–1991. *Fraud in purchase or sale of securities.*

"It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, including securities exempted under §§ 44–1843 or 44–1843.01 and including transactions exempted under § 44–1844, directly or indirectly to do any of the following:

"1. Employ any device, scheme or artifice to defraud.

"2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

"3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit."

A.R.S. § 44–2001 delineates the remedies that a purchaser may pursue when a violation of A.R.S. § 44–1991 has occurred.

Count I asserts that "the Corporation Commission Officer Defendants, while acting within the scope of their actual or apparent authority as employees of the Arizona Corporation Commission and the State of Arizona, in connection with transactions involving offers to sell or buy securities, directly or indirectly made untrue statements of material facts and omitted to state material facts necessary in order to make statements made, in light of circumstances under which they were made, not misleading; and engaged in transactions, practices, or courses of business which operated or would operate as a fraud * * *." Three of the defendants' representations and three of their omissions are then listed as examples of these "fraudulent practices." The allegations of Count I are clearly couched in the terminology of A.R.S. § 44–1991. Moreover, specific omissions and representations, which allegedly operated as a fraud, are cited. We find that this suffi-

ciently apprises the defendants of the charges against them.

■ Generally speaking, a purchaser of stock has no cause of action under the Arizona Securities Act for a rescission of the sale and recovery of the money paid for stock from one who received none of the consideration and was not a party to the sale. *See Trump v. Badet*, 84 Ariz. 319, 327 P.2d 1001 (1958). Pursuant to A.R.S. § 44–2003, however, an action under A.R.S. § 44–2001 may be brought against any person, including any dealer, salesman or agent, who made, participated in or *induced* the unlawful sale or purchase. Such persons are jointly and severally liable to the purchaser. This section, therefore, clearly fixes the liability of one who induces the unlawful sale or purchase. *Trump, supra.*

The theory of Count I is clearly that the misrepresentations and omissions of the Corporation Commissioner officer defendants induced the plaintiffs to become depositors in the Associations. As such, a cause of action, pursuant to § 44–1991, is properly stated against these defendants. A.R.S. § 44–2003.

■ The provisions of A.R.S. § 44–1991 are almost identical to the antifraud provisions of the 1933 Securities Act, 15 U.S.C. § 77q (1970). *State v. Brewer*, 26 Ariz.App. 408, 549 P.2d 188 (1976). A presence of the nine elements of common law fraud are not essential to establishing a violation of 77q. *See Securities and Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2nd Cir. 1972). Similarly, this is the case when establishing a violation of A.R.S. § 44–1991. *See Trump, supra*. Moreover, a knowledge of falsity is not a necessary element of a cause of action based upon A.R.S. § 44–1991. *Baker v. Walston and Co.*, 7 Ariz.App. 590, 442 P.2d 148 (1968). The statute instead imposes an affirmative duty not to mislead. *Washington National Corp. v. Thomas*, 117 Ariz. 95, 570 P.2d 1268 (App.1977).

Therefore, because Count I sufficiently apprises the defendants of the charges against them and adequately states a claim

upon which relief can be granted, the motion to dismiss this Count was properly denied.

Count II alleges that "the State of Arizona, Arizona Corporation Commission, the Corporation Commissioner Defendants, * * and the Corporation Commission Officer Defendants, in connection with transactions involving offers to sell or buy securities, aided and abetted [the Associations and various individuals] in their employment of devices, schemes and artifices to defraud; their making of untrue statements of material facts and their omissions to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; their engaging in transactions, practices and courses of business which operated or would operate as a fraud * * *." Numerous examples of the actions that support these allegations are then recited.

Because Count II uses the terminology of A.R.S. § 44–1991, and because it sets out specific examples of the alleged fraudulent actions, we find that it sufficiently apprises the defendants of the charges against them.

■ A defendant who aids and abets another's violation respecting the use of manipulative or deceptive devices in the sale of stock, in violation of the Federal Securities Exchange Act, is liable as a principal. *Securities Exchange Commission v. Scott Taylor & Co.*, 183 F.Supp. 904 (S.D.N.Y.1959). As we have stated, A.R.S. § 44–1991 is almost identical to the provisions of § 77q of the 1933 Securities Act. We, therefore, see no reason why one who aids and abets another in violating A.R.S. § 44–1991 should not also be held liable as a principal.

■ There are three prerequisites to a finding that one has aided and abetted a securities law violation: (1) a primary violation has occurred; (2) knowledge of or a duty of inquiry with regard to the primary violation by the person charged; and (3) a necessary contribution to the underlying scheme by the person charged. *Securities and Exchange Commission v. National Stu-*

*dent Marketing Corp.,* 402 F.Supp. 641 (D.C. 1975).

Because we cannot say, as a matter of law, that the plaintiffs will not be able to prove these prerequisites, the motion to dismiss Count II was also properly denied.

### COUNT III

Count III of plaintiffs' complaint alleges that the Arizona Corporation Commission and its agents and employees were negligent in the performance of their statutory duties. In their petition for special action, defendants assert that the duty imposed upon state agencies and public officials is one owed to the public generally, and a breach of this duty does not provide an individual with a cause of action. We agree with the defendants that ordinarily this is the law. *DeHoney v. Hernandez,* Ariz., 595 P.2d 159 (1979); *Bagley v. State,* Ariz., 595 P.2d 157 (1979); *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969); *McGeorge v. City of Phoenix,* 117 Ariz. 272, 572 P.2d 100 (App.1977); *Wesley v. State,* 117 Ariz. 261, 571 P.2d 1057 (App. 1977); *Besserman v. Town of Paradise Valley,* 116 Ariz. 471, 569 P.2d 1369 (App.1977); *Ivicevic v. City of Glendale,* 26 Ariz.App. 460, 549 P.2d 240 (1976); *Delarosa v. State,* 21 Ariz.App. 263, 518 P.2d 582 (1974); *Duran v. City of Tucson,* 20 Ariz.App. 22, 509 P.2d 1059 (1973).

In *Stone v. Arizona Highway Commission,* 93 Ariz. 384, 381 P.2d 107 (1963), this Court discarded the concept of sovereign immunity for tort liability. The basic elements of negligence, however, must still be present to support a cause of action in negligence. That is to say, there must be a duty owed to the plaintiff, a breach thereof, and an injury proximately caused by such breach. *Massengill, supra.* This Court, in *Massengill, supra,* held that the duty imposed upon governmental agencies and public officers is ordinarily a duty to the public.

An obligation owing to the general public can, however, be narrowed into a specific duty to an individual. The *Massengill* opinion cites *Veach v. City of Phoenix,* 102 Ariz. 195, 427 P.2d 335 (1967) as an illustration of this concept:

"[A] municipality has no absolute duty to provide water for fire protection purposes to its inhabitants. However, when a city assumes the responsibility of furnishing fire protection, then it has the duty of giving each person or property owner such reasonable protection as others within a similar area within the municipality are accorded under like circumstances." *Veach,* 102 Ariz. 195, 197, 427 P.2d 335, 337.

A duty to the individual may also exist when the governmental agency is itself the active tort feasor. For example, if the State of Arizona is building highways it has a duty to the individual driver to build safe highways. *See, Stone, supra.* A city's duties to properly maintain its streets, *see Vegodsky v. City of Tucson,* 1 Ariz.App. 102, 399 P.2d 723 (1965), and to remove dangerous dead trees from its land, *see City of Phoenix v. Whiting,* 10 Ariz.App. 189, 457 P.2d 729 (1969), also extend to the individual.

In the instant case, although the defendants were not the active tortfeasors, we find that the statutory language of 14 A.R.S., Title 44, Chapter 12, Article 17[2] narrows the Corporation Commission's duty into a duty to protect the injured depositors.

Article 17 provides a detailed list of requirements with which all Arizona thrift associations must comply. It also gives the Corporation Commission and the Director of Securities comprehensive powers, which are designed to foster the supervision of the affairs of Arizona thrift associations. The Commission is required to examine the affairs and records of each thrift association at least once a year, A.R.S. § 44–2064, and may suspend a thrift association's registra-

---

**2.** 14 A.R.S., Title 44, Chapter 12, Article 17 was repealed by Laws 1976, Ch. 114, § 2, effective June 24, 1976; added as A.R.S. § 6–941; re-numbered A.R.S. § 6–394. Article 17 was, however, in effect at the time of the violations alleged by the pleadings.

tion for any violation of Article 17. A.R.S. § 44–2047. Moreover, the Director of Securities is empowered to conduct such further investigations that he deems necessary. A.R.S. § 44–2044.

Although the duties of the Corporation Commission are of an enforcement nature, the Commission's obligations are more specific and narrow than the general law enforcement duties of a police officer. Ordinarily, a police officer's duty is to protect the public in general. Article 17, however, makes it clear that the Corporation Commission's duty is to protect thrift company depositors. Moreover, a police officer's duties require the performance of a wide scope of diversified acts. The Commission's duties, however, are quite specific and are enumerated in article 17. To hold that article 17 does not create a duty that extends from the Corporation Commission to the individual depositor would be to render the article meaningless.[3]

In a fact situation quite similar to this one, the Seventh Circuit recently held that a state official's statutory duty to examine and regulate state-chartered savings and loan associations, pursuant to the Illinois Savings and Loan Act, was enforceable by the injured depositors. *Tcherepnin v. Franz,* 570 F.2d 187 (7th Cir. 1978), *cert. denied,* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978). The Illinois Savings and Loan Act is similar to 14 A.R.S., Title 44, Chapter 12, Article 17, in that it charges the Department of Financial Institutions and its Director with supervising the affairs of all savings and loan associations within the state and grants the institution comprehensive powers so that it can carry out its obligations.

The Seventh Circuit opinion held that references in the Act to the protection of "the Association" indicate that the association and, more specifically, its depositors have a vested right in the duties imposed by the act upon the Department of Financial

Institutions. Although this specific language does not exist in the Arizona counterpart of the Illinois Act, the comprehensive nature of Article 17 and the specificity of the duties that it imposes indicate that the reasoning of the Seventh Circuit is clearly applicable to the instant case.

Plaintiffs cite *Bankhead v. Howe,* 56 Ariz. 257, 107 P.2d 198 (1940) and *Button v. Nevin,* 44 Ariz. 247, 36 P.2d 568 (1934) as authority for the proposition that the breach of defendant's statutory duties provided the plaintiffs with a cause of action. We recognize that because these early cases predate the *Stone/Massengill* line of cases, they do not fully consider the public/private duty distinction. We find their holdings, however, to be further precedent for the proposition that, in this type of situation, the Commission's duties extend to the individual depositor.

Since *Massengill, supra,* and with the exception of *Grimm v. Arizona Board of Pardons and Paroles,* 115 Ariz. 260, 564 P.2d 1227 (1977), neither this Court nor the Court of Appeals has found that the duty of a governmental agency or a public official extends to a private individual. We emphasize, however, that such determinations can only be made on a case by case basis and that in the instant case the public duty has been created by statutory language that is designed to protect a particular class of persons rather than the public as a whole.

It is not our concern to determine at this time which of the individual employees of the Corporation Commission, if any, may have been liable. That determination is for the trial court. *Stone, supra.* It is clear, however, from a reading of *Stone* that the individual Corporation Commissioners and the Director of Securities cannot be held liable for the negligence of their subordinates in the absence of misfeasance or actual negligence on their part:

"Public officers are responsible only for their own misfeasance and negligence,

---

**3.** The Minnesota Supreme Court recently made reference to the fact that a duty of care may be created by an ordinance that sets forth mandatory acts, which are clearly for the protection of a particular class of persons rather than the public as a whole. *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801 (Minn.Sup.Ct.1979). Article 17 is clearly such an enactment.

and not for the negligence of those who are employed under them, if they have employed persons of suitable skill." *Stone, supra,* 93 Ariz. at 394, 381 P.2d at 114.

Because there is no allegation that the Corporation Commissioner defendants were personally negligent nor that they hired persons of unsuitable skill, they cannot be liable on the facts as pled by the plaintiffs. Those portions of Count III that apply to the Corporation Commissioner defendants must, therefore, be dismissed, with leave to amend.

 Should the complaint against the Corporation Commissioner defendants be refiled to allege negligent hiring practices, a financial inability to hire a sufficient number of skilled persons could operate as a defense to the liability of the individual commissioners. However, such a defense will *not* circumvent the liability of the State of Arizona. If the state imposes duties upon its agencies and employees, it must provide adequate resources for the implementation of those duties. Finally, it is clear that the State of Arizona is responsible for tortious wrongdoings committed by its agents and employees while acting within the scope of their authority. *Stone, supra.*

Therefore, because Count III of the complaint alleges that the defendants negligently breached their statutory duties to the plaintiffs, and because we hold that these duties did in fact extend to the injured plaintiffs, the allegations in Count III are sufficient to state a claim upon which relief can be granted against all defendants except the Corporation Commissioner defendants. The trial court is ordered to dismiss Count III, with leave to amend, as it applies to the Corporation Commissioner defendants. The trial court's denial of the motion to dismiss Count III, as it applies to all other listed defendants, is affirmed.

## COUNT IV

 Count IV alleges that the State of Arizona, the Arizona Department of Insurance, the Insurance Director defendants and the Insurance Department officer defendants failed to examine or negligently or recklessly examined the affairs of Omaha and that they violated their statutory duties in renewing Omaha's certificate of authority. Count IV also asserts that the same defendants aided and abetted the Associations in the employment of devices, schemes and artifices to defraud.

The statutory provisions that define the obligations and powers of the Department of Insurance and the Insurance Director are similar in scope to the provisions of 14 A.R.S., Title 44, Chapter 12, Article 17 discussed previously. *See* 7 A.R.S., Title 20, Chapter 2, Article I. Therefore, the trial court's denial of the motion to dismiss as it applies to those portions of Count IV that allege negligence is affirmed.

The portions of Count IV that allege that the defendants aided and abetted others in perpetrating a fraud are clearly based upon the statutory prohibition against fraudulent practices, in connection with the sale of securities. A.R.S. § 44–1991. Therefore, for the reasons discussed previously in connection with Count II, the denial of the motion to dismiss those portions of Count IV that allege that the defendants aided and abetted others in perpetrating a fraud is also affirmed.

## COUNT V

Count V asserts that the surety defendants are liable on their official bonds for the actions and omissions charged in Counts I through IV. The portion of this count that alleges liability that stems from the dismissed portion of Count III is also to be dismissed, with leave to amend. The remaining portions of Count V are remanded for proceedings not inconsistent with this opinion.

The relief sought by the petitioners is granted in part and denied in part. The trial court's order denying the motion to dismiss is reversed as it applies to portions of Counts III and V. The remaining portions of Counts I, II, III, IV, and V are

remanded for proceedings not inconsistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS, J., concur.

HOLOHAN, Justice (specially concurring):

I concur in the result.

## SUPPLEMENTAL OPINION

## OPINION MODIFIED

## REHEARING DENIED

GORDON, Justice:

In our opinion in *State v. Superior Court,* 123 Ariz. 324, 599 P.2d 777 (1979), we denied a motion to dismiss Counts I and II of plaintiffs' complaint, finding that Count I adequately stated a cause of action pursuant to A.R.S. § 44–1991 and that Count II adequately asserted that the defendants aided and abetted others in violating A.R.S. § 14–1991. In light of this Court's recent adoption of the Court of Appeals opinion in *Greenfield v. Cheek,* 122 Ariz. 70, 593 P.2d 293 (App.1978); *Greenfield v. Cheek,* 122 Ariz. 57, 593 P.2d 280 (1979), Counts I and II of plaintiffs' complaint are dismissed with leave to amend. Language to the contrary in *State v. Superior Court, supra,* is hereby vacated.

The complaint was filed in November of 1977. The law in Arizona at that time was that scienter was not a necessary element of a cause of action based upon A.R.S. § 44–1991. *See Washington National Corp. v. Thomas,* 117 Ariz. 95, 570 P.2d 1268 (App. 1977); *Baker v. Walston & Co., Inc.,* 7 Ariz. App. 590, 442 P.2d 148 (1968). *Washington National, supra,* and *Baker, supra,* were, however, recently overruled by this Court in *Greenfield, supra,* which held that scienter is a necessary element of A.R.S. § 44–1991.

Because Counts I and II do not assert that the defendants knew their statements were false and acted with an intent to deceive, scienter has not been alleged. *See, Greenfield, supra.* Counts I and II are,

therefore, dismissed with leave to amend the pleadings to conform with the current status of the law.

In view of the modifications of the original opinion made herein, the motion for rehearing is denied.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.