604 P.2d 637

Raymond J. OLESZCZUK and Micheline J. Oleszczuk, husband and wife, and natural parents of Guy Winston Oleszczuk, a Deceased Minor, and on behalf of Rick K. Oleszczuk, a minor, Appellants,

v.

The STATE of Arizona, a body politic, William Green and Jane Doe Green, husband and wife, Appellees.

No. 14456.

Supreme Court of Arizona, In Banc.

Dec. 3, 1979.

---

Barber, Haralson & Kinerk, P. C. by Dale Haralson, Tucson, for appellants.

John A. LaSota, Jr., Former Atty. Gen., Robert K. Corbin, Atty. Gen., by Albert Morgan and James R. Redpath, Asst. Attys. Gen., Phoenix, for appellees.

CAMERON, Chief Justice.

Plaintiffs-appellants Raymond J. Oleszczuk and Micheline J. Oleszczuk appeal from an order granting defendants'-appellees' motion for summary judgment. We have jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer only one question on appeal: Did the State Motor Vehicle Department breach a duty to the plaintiffs when they issued a driver's license to a person with a known history of psychomotor seizures?

The facts as set forth in the complaint and necessary for a determination of this matter are as follows. Prior to 1974, Arthur Lynn Bilodeau had possessed an Arizona driver's license but had voluntarily surrendered it because of one or more collisions caused by his psychomotor disorder. At the

time he surrendered his license, the Motor Vehicle Department statute, A.R.S. § 28–428, read as follows:

"A. The department shall file every application for a license received by it and shall maintain suitable indexes containing, in alphabetical order:

\* \* \* \* \* \*

"3. The name of every licensee whose license has been suspended or revoked by the department and after each name note the reasons for the action.

"B. The department shall also file all abstracts of court records of convictions received by it under the laws of this state and in connection therewith maintain convenient records or make suitable notations in order that an individual record of each licensee showing the convictions of the licensee and the traffic accidents in which he has been involved shall be readily ascertainable and available for the consideration of the department upon an application for renewal of license and at other suitable times."

The Motor Vehicle Department was also required by A.R.S. § 28–432 to establish a Medical Advisory Board to advise the department on medical standards for driver licensing.

On 24 July 1974, Bilodeau submitted an application to the Arizona Motor Vehicle Department for a new driver's license. At the same time he presented to the license examiner a letter concerning the psychomotor disorder from Dr. Charles L. Echols, Jr., a Phoenix neurologist who had been treating Bilodeau for his seizure disorder since 1971.[1] Because the department had not established the Medical Advisory Board, there were no medical standards for driver's license applicants or examinations as provided by A.R.S. § 28–433(2)(a) and (b). Also because the department had failed to comply with A.R.S. § 28–428, supra, there was no record in its files of Bilodeau's previous license surrender, the reasons therefore, or of any previous traffic accidents.

Mr. Bilodeau did not fill in the answers on his license application wherein it asked if the applicant was subject to epilepsy, seizures, or fainting spells. Instead, the examiner, without Mr. Bilodeau's knowledge or permission, filled in these answers in the negative. No one in the Motor Vehicle Department made an investigation of Mr. Bilodeau's fitness to drive, and a driver's license was routinely issued to Mr. Bilodeau.

On 1 November 1975, Raymond J. Oleszczuk was struck from the rear by Bilodeau's automobile. Bilodeau at the time was unconscious due to a psychomotor seizure. With Mr. Oleszczuk in his car were his two sons, Rick and Guy, and a third passenger Mike Maggard. As a result of the collision, all occupants of the Oleszczuk vehicle suffered serious injuries requiring intensive medical treatment. Guy Oleszczuk died as a result of his injuries.

Mr. and Mrs. Oleszczuk, individually and as surviving parents of Guy Oleszczuk and parents and guardians ad litem of Rick Oleszczuk, brought a personal injury and wrongful death action against the State of Arizona, its employee in the Motor Vehicle Department, William Green, and Dr. Echols. Plaintiffs asserted that the State, through its Motor Vehicle Department, breached a duty to them by negligently failing to keep a record of Mr. Bilodeau's previous accidents and license cancellations as required by A.R.S. § 28–428; in failing to establish a Medical Advisory Board as required by A.R.S. § 28–432; and in filling in a false answer on Mr. Bilodeau's application all of which resulted in a driver's license being issued to Bilodeau.

Defendants, State of Arizona and William Green, moved for summary judgment stating that the duties breached by the State, if any, were owed to the public generally and not to the plaintiffs individually. The motion for summary judgment was granted, and plaintiffs appeal.

---

1. It may be presumed from the complaint that the letter was favorable toward Mr. Bilodeau's obtaining a license because the complaint in another count alleges that Dr. Echols, also a defendant below, "negligently and carelessly did advise and encourage ARTHUR LYNN BILODEAU to secure an Arizona driver's license."

In *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969), a case wherein law enforcement officers failed to arrest a reckless drunken driver who caused five deaths in an automobile accident, we stated the general rule concerning the duty of governmental agencies and public officers to those injured by their negligence:

" ' . . . if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution.' (citations omitted)" 104 Ariz. at 521, 456 P.2d at 379.

We have recognized, however, that in certain circumstances what begins as a public duty can be narrowed to a specific duty to an individual by the conduct of the public officer. In *Grimm v. ARizona Board of Pardons and Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977), a majority of this court held that the State Board of Pardons and Paroles could be liable to an individual for the grossly negligent or reckless release of a highly dangerous prisoner. We have also stated that the Arizona Corporation Commission could be liable in a case where there was statutory language designed to protect a particular class of persons rather than the public as a whole:

"Although the duties of the Corporation Commission are of an enforcement nature, the Commission's obligations are more specific and narrow than the general law enforcement duties of a police officer. Ordinarily, a police officer's duty is to protect the public in general. Article 17, however, makes it clear that the Corporation Commission's duty is to protect thrift company depositors. Moreover, a police officer's duties require the performance of a wide scope of diversified acts. The Commission's duties, however, are quite specific and are enumerated in article 17. To hold that article 17 does not create a duty that extends from the Corporation Commission to the individual depositor would be to render the article meaningless. (footnote omitted)"

*State v. Superior Court of Maricopa County*, 123 Ariz. 324, 333, 599 P.2d 777, 786 (1979).

In holding the Corporation Commission potentially liable, we recognized the difficulty of providing a hard and fast rule which would provide the practitioner and the courts with an easy method of determining when a general public duty has been narrowed to a specific individual duty:

" * * * We emphasize, however, that such determinations can only be made on a case by case basis * * *." *State v. Superior Court*, supra, 123 Ariz. at 333, 599 P.2d at 786.

In the instant case, the statute, A.R.S. § 28–428, was designed to find and identify those drivers who, because of past history, might be dangerous to other users of the highway such as plaintiffs. A.R.S. § 28–432 mandated a Medical Advisory Board to assist in identifying the types of medical problems that might result in unsafe drivers. These duties are quite specific and obviously designed to protect that portion of the public using the highways. Likewise, that portion of the application which required that the applicant indicate whether he was subject to epilepsy, seizures, or fainting spells was similarly designed to protect people such as the plaintiffs who might be injured in an automobile accident as a result of a driver suffering such a spell.

We believe this case is closer to *State v. Superior Court*, supra, than to *Massengill*, supra. There is a difference between the general law enforcement duties of a police officer and the specific duty involved in the issuance of driver's licenses. The duty of the law enforcement officers in *Massengill*, supra, was not just to highway safety alone, but to the general safety of all persons whether using the highways or not. It was a wide variety of diversified duties that all law enforcement officers have to the general public.

The duty of the Motor Vehicle Department in the issuance of driver's licenses

is more narrow. It is the specific duty of issuing driver's licenses. When there is a statute involved, the more specific and narrow the duty required by the statute, the more likely it is that the duty has been narrowed from a general duty to the public to a specific duty to an individual. We believe that the trial court erred in granting the motion of the defendants for summary judgment.

Remanded for further proceedings consistent with this opinion.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.