630 P.2d 554

**Patricia CADY, Plaintiff-Appellant,**

v.

**STATE of Arizona, Defendant-Appellee.**

**No. 1 CA–CIV 4825.**

Court of Appeals of Arizona,
Division 1,
Department B.

April 30, 1981.

Rehearing Denied June 8, 1981.

Review Denied June 30, 1981.

---

Thomas E. Johnson and Anastacio Ned Vigil, Tucson, for plaintiff-appellant.

Jennings, Strouss & Salmon, by John S. Hobbs, Phoenix, for defendant-appellee.

JACOBSON, Judge.

We are again faced with the confusing area of whether a duty owed by the state to the public in general has been narrowed to a private duty which will support liability for the negligent acts of the state's agent. In particular this appeal presents the liability of the state for acts committed by an escaped convict.

This action was instituted by plaintiff-appellant, Patricia Cady, against the State of Arizona and several employees of the Department of Corrections for injuries suffered by her at the hands of John Bates, a felon who had escaped from the custody of the Department of Corrections. Following several procedural maneuvers not material to the issues raised by this appeal, the Superior Court of Maricopa County granted the state's motion for summary judgment, holding, in essence, that the state owed no duty to the plaintiff under the undisputed material facts presented which would form any basis for liability for the negligent acts of its employees. The plaintiff has appealed.

The undisputed facts are that on February 25, 1977, John David Bates and two other convicts were transported from the Arizona State Prison in Florence, Arizona, to the Maricopa County Hospital in Phoenix, Arizona.

The prison van used to transport the prisoners was parked in the public parking lot of the Maricopa County Hospital and the prisoners were escorted by two Department of Corrections officers into the hospital. Shortly before noon, the three prisoners, under the custody of the two guards, left the hospital and proceeded through the public parking lot to the prison van. Numerous people were coming and going in this area. Each prisoner was secured with a waist chain and wrist manacles, but no leg irons. Upon reaching the van, one of the guards checked the van for security, and opened the side sliding doors. After one of the prisoners had been placed in the van, Bates turned to the guard and said, "Okay, gentlemen, this is it," whereupon a female instructed the guards not to touch their guns. The guards turned and were confronted by a female (later identified as Bates' wife), holding a gun. Bates disarmed the guards, locked them in the van and made good his getaway in a silver station wagon.

Later that day, at approximately 11 p. m., the plaintiff was accosted by Bates and his wife in a parking lot in Tucson, Arizona (approximately 120 miles from Phoenix). She was abducted by them and forced to drive the fugitives in her automobile to the state of Missouri. The plaintiff was held captive by the Bates for six days during which time she suffered both emotional and physical injuries.

Plaintiff's cause of action arising out of these facts is bottomed upon the admitted duty of the Department of Corrections to keep convicted felons in custody, a negligent breach of that duty, and resulting injuries proximately caused by the breach. The state, while conceding that a general duty exists to keep convicted felons in custody[1] and admitting for summary judgment purposes that a trier of fact could find negligence on the part of the prison guards in allowing Bates to escape, nevertheless contends that its general duty to the public created by this statute had not narrowed to a private duty to this plaintiff, the breach of which would give rise to liability.

We began this opinion by commenting that this case fell within the "confusing" area of public versus private duty insofar as actions of state officers are concerned. Although this confusion need not be documented for the knowledgeable, a review of Arizona case law on this subject may be helpful for the uninitiated. We can start our review with the 1969 case of *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969), which involved the liability of Yuma County for the failure of a Yuma County deputy sheriff to apprehend and arrest a drunken driver under facts from which a jury could conclude that the deputy was negligent in not performing his duty. The drunken driver ran into the plaintiff who sued the county for the deputy's negligent breach of his duty to arrest. After acknowledging the abandonment of the doctrine of sovereign immunity (*Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963), the court noted that a prospective plaintiff still needed to prove the elements of actionable negligence. These include (1) a duty owed to the plaintiff, (2) the breach of that duty and (3) resulting injury proximately caused by the breach.

It was on the element of duty that the court focused in denying liability on the part of the county. In doing so, the court, quoting 2 T. Cooly, Torts 385–386 (4th Ed. 1932), held:

> [I]f the duty which the official authority imposes upon the officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution.

> \*   \*   \*   \*   \*   \*

The failure of a public officer to perform a public duty can constitute an indi-

---

1.  A.R.S. § 31–201.01(A) provides: "The superintendent shall hold in custody all persons sentenced to the state prison under the law and shall hold such persons for the term directed by the court or for such other period of time as may be ordered by the board of pardons and paroles, subject to law."

vidual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance.

104 Ariz. at 512, 456 P.2d at 379.

Illustrative of this narrowing of the public duty to a private duty are cases where because of state action the *plaintiff* acquires a relationship with the state so that the failure of the state to perform its public duty results in actively causing injury to that particular plaintiff; *e. g.*, the failure to protect an informant such as in the case of *Schuster v. City of New York*, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958).

The rule in *Massengill* that a breach of duty owed to the public is not actionable unless the plaintiff can establish that a course of conduct occurred which gives rise to a special relationship was followed in Arizona for several years. *Duran v. City of Tucson*, 20 Ariz.App. 22, 509 P.2d 1059 (1973) (denying liability for failure to enforce a fire code); *Delarosa v. State*, 21 Ariz.App. 263, 518 P.2d 582 (1974) (denying liability against the state for failure to inspect brakes); *Ivicevic v. City of Glendale*, 26 Ariz.App. 460, 549 P.2d 240 (1976) (denying liability for negligent failure of police officer to prohibit intoxicated driver from operating a motor vehicle).

Then along came *Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977), which involved a parolee who was alleged to have been released on parole in a grossly negligent manner and who subsequently killed Mr. Grimm during a robbery of a tavern. Suit was brought for Grimm's wrongful death against the state. The Arizona Supreme Court held that plaintiff's complaint stated a cause of action. On the duty issue the court, while recognizing the validity of the *Massengill* rationale, stated:

> The Board of Pardons and Paroles in this instance has narrowed its duty from one owed to the general public to one owed to *individuals* by assuming parole supervision over, or taking charge of, a

person having dangerous tendencies. (Emphasis added).

115 Ariz. at 267, 564 P.2d at 1234.

The basis of this "narrowing" according to the court was that *Massengill* dealt with a failure to act (act of omission) while the Board of Pardons and Paroles performed an affirmative act in releasing the dangerous parolee (an act of commission). Since there was no attempt to establish a relationship between the decedent Grimm and the Board of Pardons and Paroles and the court referred to individuals in general, rather than the particular plaintiff involved, it could reasonably be assumed that the liability of the state in these types of cases turned not on the public or private duty dichotomy, but rather whether the action of the state arose from an act of commission or omission.

Following the *Grimm* decision, the Court of Appeals on several occasions applied the rationale of public versus private duty and the Arizona Supreme Court denied review. *McGeorge v. City of Phoenix*, 117 Ariz. 272, 572 P.2d 100 (App.1977) (denying liability for failure of police to detain an irate citizen who subsequently shot plaintiff's decedent); *Besserman v. Town of Paradise Valley, Inc.*, 116 Ariz. 471, 569 P.2d 1369 (App. 1977) (denying liability for faulty building inspection).

The Supreme Court itself reaffirmed the *Massengill* principle in the case of *DeHoney v. Hernandez*, 122 Ariz. 367, 595 P.2d 159 (1979), which denied liability to a jewelry store owner for failure of the police to promptly answer a silent alarm which the police themselves were instrumental in having installed in the plaintiffs' store. It should be noted that in *DeHoney*, prior particularized conduct by the police with this plaintiff which could give rise to the creation of a special relationship between the police and plaintiff was not considered sufficient reason for narrowing of duty.

Is the doctrine of *Massengill* which requires the creation of a special relationship between the injured plaintiff and the state before a duty is established a viable doctrine in Arizona? Two additional Arizona Supreme Court decisions cast serious doubts

on its validity. The first of these is *State v. Superior Court*, 123 Ariz. 324, 599 P.2d 777 (1979), which involved an action by the depositors of a thrift association against the regulatory authorities of the state seeking liability against those authorities for failure to perform their statutory duties in controlling the financial affairs of the thrift association. While recognizing that the actions of the regulatory bodies were acts of omission, the court nevertheless held that the public duty owed was narrowed by the statutory scheme itself. In doing so, the court noted:

> Since *Massengill, supra,* and with the exception of *Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977), neither this Court nor the Court of Appeals has found that the duty of a governmental agency or a public official extends to a private individual. We emphasize, however, that such determination can only be made on a case by case basis and that in the instant case the public duty has been created by statutory language that is designed to protect a particular class of persons rather than the public as a whole.

123 Ariz. at 333, 599 P.2d at 786.

*State v. Superior Court* was followed in *Oleszczuk v. State*, 124 Ariz. 373, 604 P.2d 637 (1979). *Oleszczuk* needs to be analyzed for it appears to completely abolish the concept of the necessity of a particularized relationship existing between the governmental agency and the putative plaintiff. In *Oleszczuk*, a Mr. Bilodeau surrendered his driver's license to the Department of Motor Vehicles because he had been involved in one or more accidents caused by a psychomotor disorder. On July 24, 1974, Bilodeau submitted an application to the Motor Vehicle Department for a new driver's license, accompanied by a letter from his doctor apparently indicating that Bilodeau's disorder was under control.

The examiner issued Bilodeau a license after filling in a question left blank by Bilodeau inquiring as to whether the applicant suffered from epilepsy, seizures or fainting spells.

At this time the Department of Motor Vehicles was required to keep a record of all licensees whose licenses had been suspended or revoked and to keep a record of all convictions for traffic offenses together with the accidents giving rise to those convictions. A.R.S. § 28–428. In addition, the Motor Vehicle Department was required to establish a medical advisory board to advise the department on medical standards for driver licensing. A.R.S. § 28–432.

Apparently neither Mr. Bilodeau's prior license surrender nor his previous traffic accidents got into the files and the department had failed to establish a medical advisory board.

Approximately one and one-half years later, Bilodeau became unconscious while driving his automobile and rear-ended an automobile being driven by Oleszczuk, resulting in serious injuries and a death. Oleszczuk sued the state, contending that it and its agencies were negligent in issuing a driver's license to Bilodeau. In reversing a summary judgment in favor of the State, the Supreme Court held:

> We believe this case is closer to *State v. Superior Court,* supra, than to *Massengill,* supra. There is a difference between the general law enforcement duties of a police officer and the specific duty involved in the issuance of driver's licenses. The duty of the law enforcement officers in *Massengill* was not just to highway safety alone, but to the general safety of all persons whether using the highways or not. It was a wide variety of diversified duties that all law enforcement officers have to the general public.
>
> The duty of the Motor Vehicle Department in the issuance of driver's licenses is more narrow. It is the specific duty of issuing driver's licenses. When there is a statute involved, the more specific and narrow the duty required by the statute, the more likely it is that the duty has been narrowed from a general duty to the public to a specific duty to an individual.

124 Ariz. at 376–7, 604 P.2d at 640–41.

What principles can be gleaned from this review of the Arizona case law (aside from

the fact that the law will be established "on a case by case basis," *State v. Superior Court, supra*, which, of course, is to say there is no law at all)? If we were convinced that the Supreme Court in its decisions in *Grimm, State v. Superior Court*, and *Oleszczuk* had actually analyzed the rationale of *Massengill* and its supportive corollary which makes the general rule work, we would have to conclude that now a violation of a public duty is always actionable by a plaintiff who is injured by a breach of that duty. However, because of the vacillation of the Supreme Court on this subject and that court's unwillingness to specifically overrule *Massengill*, we are not so convinced.

To place this matter in proper perspective, the rationale of *Massengill*, which we believe to be sound law, is that if the duty which is alleged to have been breached is one that the state (or its governmental agencies or agents) undertakes because of the obligation imposed upon it for the protection of the public at large,[2] that duty is actionable by an individual only when it can be established that by reason of previous conduct a relationship was established between the state and the individual such that failure to perform that duty or its negligent performance would actively work to the special injury of that individual.

In our opinion, it is the failure of the Supreme Court to focus upon the sine qua non of the public duty, that is, the relationship established by prior conduct between the injured plaintiff and the state, that has given rise to the mixed bag of judicial opinion on this subject. Under the *Massengill* rationale, it should be immaterial whether the breach of the duty arose from an act of

omission as compared to an act of commission (in this case we have some difficulty in determining whether the prison official failed to keep Bates in custody (an act of omission) or by transporting him from Phoenix facilitated his escape (an act of commission); or whether the duty was imposed by a general statute or a specific statute. We admit that a general statutory scheme for the protection of a particular class of the public can give rise to a reliance by the public on existence of that protection in conducting their affairs, and that the breach of that reliance and protection may impose liability. *Tcherepnin v. Franz*, 570 F.2d 187 (7th Cir.), cert. denied, 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978). (In our opinion, *State v. Superior Court, supra*, dealing with the depositors of thrift companies can be supported on this rationale.)

However, when the duty is created by statute, no matter how specific, the first inquiry must always be whether the statutory functions undertaken pursuant thereto were in the furtherance of an obligation arising out of the protection of the public at large. If the answer to that inquiry is in the affirmative, then the second inquiry is undertaken to determine whether by prior conduct between the state and the injured plaintiff, a relationship was established whereby either the failure to perform the public duty or its negligent performance would actively work a special injury to that plaintiff.[3]

Applying this analysis to the facts in the case, we hold that the duty to keep felons in custody created by A.R.S. § 31–201.01(A) imposes upon the superintendent and hence the state, obligations that flow to the public at large. We further hold that

---

**2.** By this definition of "duty" we automatically eliminate those duties that arise out of conduct which if performed by an individual would impose liability but which by principles of respondeat superior impose liability on the governmental body, such as the negligent driving of a police officer who causes injury to a citizen, and those duties which imposed governmental liability when dealing with the providing of specific services and facilities such as the duty to maintain streets and highways, *see Stone v. Arizona Highway Commission, supra*.

**3.** We realize that the result reached in *Oleszczuk* is not supportable under this analysis as the statutory scheme of issuing drivers' licenses does not create a justifiable reliance on the part of the motoring public that all licensed drivers are either safe drivers or free from medical problems, nor was the injured plaintiff able to establish a relationship based upon conduct between the state and himself.

the plaintiff here has failed to to plead or establish a course of conduct between herself and the state which would create a relationship that would form the basis of a duty to her individually.[4] For these reasons the judgment of the trial court is affirmed.

We realize that in reaching this conclusion we are treating both *Grimm* and *Oleszczuk* as aberrations in the law of public duty. We further realize that in the final analysis the question of whether a "duty" is to be imposed is a policy decision that rests, in this case, with the Arizona Supreme Court.

Judgment affirmed.

HAIRE, P.J., and WREN, J., concur.

---

**4.** We do not reach the issue of the whether the plaintiff here was foreseeable either in determining the extent of duty or the expansion of negligence. Nor do we determine whether, assuming the duty exists, Mr. Bates' criminal act in effectuating the escape was an independent superseding act. *See Chavez v. Tolleson Elementary School District*, 122 Ariz. 472, 595 P.2d 1017 (App.1979).