**Michael F. FITZPATRICK, Connie Fitzpatrick, Michael Ryan Fitzpatrick, and Bryan Fitzpatrick, Appellants,**

v.

**STATE of Iowa; Iowa Board of Parole, An Agency of the State of Iowa; Tom J. Molamphy, Both Individually and as a Parole Officer of the State of Iowa; William L. Gillman, Both Individually and as Director of the Fourth Judicial District Department of Correctional Services, Appellees.**

No. 88–657.

Supreme Court of Iowa.

April 19, 1989.

Bruce H. Stoltze of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., Eleanor E. Lynn, Asst. Atty. Gen., for appellees.

CARTER, Justice.

The plaintiff, Michael F. Fitzpatrick, is a police officer in the State of Washington who alleges he was shot and seriously injured by a burglary suspect who proved to be on parole from the Iowa State Penitentiary. The officer and members of his family commenced the present action against the State of Iowa, the Iowa Board of Parole, the suspect's parole officer, and the parole officer's supervisor. Recovery was sought under the Iowa Tort Claims Act (Iowa Code ch. 25A) based on alleged negligence and also under 42 U.S.C. section 1983 based on alleged deprivation of protected constitutional rights. The district court dismissed the action on motion under

Iowa Rule of Civil Procedure 104(b). The plaintiffs have appealed. Upon consideration of the arguments presented on the appeal, we affirm the judgment of the district court.

The record presented to the district court on the motion to dismiss consisted entirely of the rather detailed allegations of the petition. These allegations were substantially as follows. Jerry Dale Lain was released on parole from the Iowa State Penitentiary on April 7, 1982. On September 7, 1982, plaintiff Michael F. Fitzpatrick, while on duty as a police officer for the City of Richland, Washington, was stabbed and shot while trying to arrest Lain for a burglary in that city. As a result of the assault on Fitzpatrick, Lain was convicted in a Washington court of assault with a deadly weapon and sentenced to life imprisonment.

The conviction which had led to Lain's incarceration in the State of Iowa occurred in 1978. On May 13, 1978, he had been sentenced to serve ten years in the Iowa State Penitentiary for conviction of willful injury, a class C felony. In August 1978 and again in February 1979, Lain underwent psychological evaluations. These examinations revealed a history of violence, and he was diagnosed as having an antisocial personality disorder. On August 29, 1980, Lain was subjected to another psychiatric evaluation which was conducted at the Iowa State Medical Facility in Oakdale. He was again diagnosed as having an antisocial personality disorder.

The petition alleges that while Lain was incarcerated he was found guilty of numerous prison rule violations, including assaulting other inmates. His applications for parole were rejected in April 1979 and April 1980. On April 7, 1982, Lain was granted parole. Defendant Tom J. Molamphy, a community correction service worker in the Missouri Valley area, was assigned Lain's parole supervision.

The petition alleges that, almost immediately upon his release from custody and continuing during the months of May and June of 1982, Lain committed serious violations of his parole agreement which were known to defendant Molamphy. These violations consisted of disorderly conduct, assault upon Lain's wife, intoxication, and breaking a window at his wife's parents' house. At least one of these incidents had resulted in Lain's arrest by Missouri Valley police on a charge of criminal mischief.

When Molamphy attempted to contact Lain with respect to these violations in late June 1982, he was unable to locate him. Various individuals suggested to Molamphy that Lain, in violation of his parole agreement, had gone to the State of Washington with another Iowa parolee. On August 6, 1982, Molamphy presented a parole violation information and arrest warrant to a Harrison County magistrate. At this same time, he recommended that the Board of Parole revoke Lain's parole. The report recommending revocation was approved by defendant William Gillman, Molamphy's supervisor. The petition asserts that, notwithstanding the foregoing circumstances, police authorities in the State of Washington had not been advised by Iowa authorities as to Lain's suspected presence in that state at the time officer Fitzpatrick was accosted.

Plaintiffs claim that the State, its agencies, and the two state employees named as defendants were guilty of negligence in several particulars, which was a proximate cause of injuries to plaintiff Michael F. Fitzpatrick, his wife and children. They claim that the Board of Parole was negligent in paroling Lain when it had reason to know that he would be a danger to the community. They claim that community corrections service worker Molamphy was negligent in supervising Lain's parole status and that Molamphy's superior, defendant Gillman, was negligent in supervising Molamphy with respect to Lain's parole. It is also claimed by plaintiffs that the State and its agents were negligent in not advising law enforcement agencies in the State of Washington that Lain was believed to have fled to that state in violation of his parole. Plaintiffs also claim that the same acts or omissions upon which they predicate their negligence claims give rise to liability under 42 U.S.C. section 1983.

## I. *Legal Sufficiency of Plaintiffs' Negligence Claims.*

The order granting defendants' motion to dismiss under rule 104(b) can be upheld only if the petition on its face fails to state a cause of action upon which relief could be granted under any circumstances. *Smith v. State,* 324 N.W.2d 299, 300 (Iowa 1982); *Cole v. Taylor,* 301 N.W.2d 766, 767 (Iowa 1981); *Weber v. Madison,* 251 N.W.2d 523, 525 (Iowa 1977). In determining this issue, we must view the allegations of the petition in the light most favorable to plaintiffs. *Citizens for Washington Square v. City of Davenport,* 277 N.W.2d 882, 883–84 (Iowa 1979); *Weber,* 251 N.W.2d at 525. The district court's order indicated that the motion was sustainable on the basis that the State and its employees acted with due care as a matter of law. It also indicated that the motion was sustainable under the "fireman's rule" which this court recognized in *Pottebaum v. Hinds,* 347 N.W.2d 642 (Iowa 1984).

The State seeks to uphold the district court's order on both of the grounds specified in the ruling. It also urges that the motion was properly granted on the grounds raised in paragraph six of its motion to dismiss. That paragraph of the motion asserted that there was no cause of action for parole officer negligence on the facts which plaintiffs assert.

If any ground asserted in a motion to dismiss is valid, a ruling sustaining the motion will be affirmed on appeal, even though other reasons were relied on by the district court. *Rick v. Boegel,* 205 N.W.2d 713, 716 (Iowa 1973); *In re Lone Tree Community School Dist.,* 159 N.W.2d 522, 526 (Iowa 1968); *Emmert v. Neiman,* 245 Iowa 931, 934, 65 N.W.2d 606, 608 (1954). Because the district court's reliance on the pleadings to establish due care as a matter of law was tenuous, and its application of the fireman's rule has raised some doubts, we prefer to test the ruling against the alternative ground advanced in paragraph six of the State's motion.

In seeking reversal, plaintiffs note that, under subsection 5(b) of Iowa Code section 25A.2 (1981), tort claims are allowed against state employees for injuries caused by a "negligent or wrongful act or omission ... while acting within the scope of the employee's office or employment." They further note that, under subsection 5(a) of that statute, tort claims may be brought against the state for the "negligent or wrongful act or omission of any employee."

Plaintiffs also stress that this court suggested in *Anthony v. State,* 374 N.W.2d 662 (Iowa 1985), in considering the analogous situation of a prisoner under work release supervision, that

> [t]he State could be liable in negligence for failing to exercise due care in implementing [the work release] plan but not for breach of any duty that inheres in the decisions involved in formulating the plan.

*Id.* at 667. Plaintiffs tacitly concede that the approach to discretionary function advanced in *Anthony* and the more recent decision of *Sheerin v. State,* 434 N.W.2d 633 (Iowa 1989), would insulate the state and its agencies from any liability arising from both the decision to parole Lain and the decisions relating to the terms and conditions of his parole. They urge, however, that the *Anthony* rationale, as expressed in the quoted language, does not preclude and, indeed, supports their claims based on negligent implementation of Lain's parole.

In response to these arguments, the State urges that the suggestion in our decisions that the discretionary function or duty exception is strictly limited to decisions made at the planning level should be modified. It urges that some decisions made at the operational level should also be included within the discretionary function exception. In addition, the State argues that, irrespective of the discretionary function exception, the same rationale which led to rejection of "social worker malpractice" for negligent placement of children in *M.H. by and through Callahan v. State,* 385 N.W.2d 533 (Iowa 1986), and *Rittscher v. State,* 352 N.W.2d 247 (Iowa 1984), should lead to rejection of liability claims for "parole officer malpractice."

In seeking to resolve the conflicting claims of the parties, we begin with a review of the *Anthony* decision. The portion of the opinion indicating that the state "could be liable for negligence" as a result of acts or omissions at the operational level was, we believe, intended to confirm the principle that liability for operational negligence was not precluded by the discretionary function exception. We do not find that this statement in the opinion was a general affirmation of the plaintiffs' theory of liability based on negligence.

The discretionary function exception was raised in *Anthony* as a defense to only some of the negligence claims asserted. The negligence claims as to which it was urged and concerning which the quoted language was applicable were resolved against the plaintiffs based on the trial court's findings of an absence of negligence. With respect to the rest of the negligence claims in the *Anthony* case, we stated:

> The general rule at common law is that a person has no duty to prevent a third person from causing harm to another. Exceptions have been recognized in a number of situations. The one involved here is stated in *Restatement (Second) of Torts* section 315 (1965):
>
> > There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> >
> > (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct,....
>
> *... [W]e need not and do not decide in this case whether to recognize the exception or whether it would apply in the present facts. Such far-reaching and sensitive issues will be better decided in a case in which they are dispositive.*

*Anthony*, 374 N.W.2d at 668 (emphasis added). Based on the language last quoted, it is apparent the issue of whether the state, its agencies, or its employees owe a duty to third parties to prevent prisoners and parolees from causing them harm has not been finally determined prior to the present case.

A persuasive argument that such duty does not exist is found in *Cady v. State,* 129 Ariz. 258, 630 P.2d 554 (Ariz.App.1981). In discussing the issue, the court stated:

> [T]he rationale, ... which we believe to be sound law, is that if the duty which is alleged to have been breached is one that the state (or its governmental agencies or agents) undertakes because of the obligation imposed upon it for the protection of the public at large, that duty is actionable by an individual only when it can be established that by reason of previous conduct a relationship was established between the state and the [injured] individual such that failure to perform that duty or its negligent performance would actively work to the special injury of that individual....
>
> ... We admit that *a general statutory scheme for the protection of a particular class of the public* can give rise to a reliance by the public on existence of that protection in conducting their affairs, and that the breach of that reliance and protection may impose liability....

However, when the duty is created by statute, no matter how specific, the first inquiry must always be whether the statutory functions undertaken pursuant thereto were in the furtherance of an obligation arising out of the protection of the public at large. If the answer to that inquiry is in the affirmative, then the second inquiry is undertaken to determine whether by prior conduct between the state and the injured plaintiff, a relationship was established whereby either the failure to perform the public duty or its negligent performance would actively work a special injury to that plaintiff.

Applying this analysis to the facts in the case, we hold that the duty to keep felons in custody ... imposes upon the superintendent [of corrections] and hence the state, obligations that flow to the public at large. We further hold that the plaintiff here has failed to plead or establish a course of conduct between herself and the state which would create a rela-

tionship that would form the basis of a duty to her individually.

*Id.* at 263, 630 P.2d at 559–60 (emphasis added) (citations omitted) (footnotes omitted). A similar view is expressed as follows in *Williams v. State,* 308 N.Y. 548, 127 N.E.2d 545 (1955):

> [I]f the State negligently permitted Kennedy's premature return to society, it breached only that *public* duty *to punish,* a duty owed to the members of the community collectively but importing no "crushing burden" of liability to individuals for the breach thereof.

*Id.* at 556, 127 N.E.2d at 549.

■ Plaintiffs' claims based on the alleged acts or omissions of community corrections officer Molamphy and his superior Gillman are premised on the theory that these parole officials should have acted with more dispatch to restrict Lain's liberty by arresting him or requesting law officers in the State of Washington to arrest him. Assuming that the conduct of Molamphy or Gillman in this regard failed to satisfy the standard of "due care under the circumstances," we do not believe that such failure should render them or the state liable for plaintiffs' injuries.

The basis of plaintiffs' claims is not dissimilar in legal principle from a claim based on the negligent failure of a police officer to arrest a person when possessed of probable cause to do so. We have previously rejected the contention that such failure to act will give rise to a legal liability. *See Hildenbrand v. Cox,* 369 N.W.2d 411 (Iowa 1985). In *Hildenbrand,* we reaffirmed our prior holding in *Smith v. State,* 324 N.W.2d 299 (Iowa 1982), that we do not recognize an independent tort for negligent investigation of crime by law enforcement officers. We then applied this principle to the failure-to-arrest situation and made the following observation:

> We choose not to depart from the rule of *Smith* and its rationale. Instead we apply here a sound corollary of that rule of non-liability of peace officers investigating criminal activity. The rule not only applies when the person allegedly harmed by a negligent investigation has been charged and arrested, but also when the allegedly negligent investigation results in no arrest....
>
> Our refusal to recognize a tort of negligent failure to detect a person's intoxicated condition and protect the person from harm is consistent with common law principles recognized by sections 314, 314A, 315, 319 and 320 of the Restatement (Second) of Torts (1965). While adopting the general rule that a person owes no duty to act for the protection of others unless the actor has a special relationship to the other person, those Restatement provisions identify the special relationships and circumstances under which liability can be imposed on the actor.

*Id.* 369 N.W.2d at 415. This rationale has been similarly applied by courts in other jurisdictions. *See Cuffy v. City of New York,* 69 N.Y.2d 255, 513 N.Y.S.2d 372, 505 N.E.2d 937 (1987); *Sawicki v. Village of Ottawa Hills,* 37 Ohio St.3d 222, 525 N.E.2d 468 (1988).

We are satisfied that the absence of a special relationship between the public officials and the injured parties which precluded recovery in *Hildenbrand* also serves to defeat recovery on the present claims. In reaching this conclusion, we find considerable merit in the State's contention that we would be acting inconsistently if we were to permit recovery on the present claims in the face of our rejection of social worker liability in the *Callahan* and *Rittscher* cases. For purposes of applying the Restatement standard of special relationships, a much closer nexus existed between the injured parties and agents of the state in those cases than has been shown to exist between the present plaintiffs and the affected state agencies.

Plaintiffs contend that a motion to dismiss under rule 104(b) is an inappropriate procedural device for the adjudication of their claims on the merits. We have cautioned the bar and trial court judges that, since the advent of notice pleading, it is a rare case which will not survive a rule 104(b) motion. *See American Nat'l Bank v. Sivers,* 387 N.W.2d 138, 140 (Iowa 1986).

In spite of this admonition, we find that the defendants' motion to dismiss was properly granted in the present case.

As indicated in our prior discussion, we are not deciding this case based on whether or not the State, its agencies, or its employees were negligent. We are assuming that the allegations of negligence against them could be sustained upon trial. Notwithstanding that assumption, we have determined the absence of liability as a matter of law given the relationship of the parties. The granting of motions to dismiss upon a finding of absence of legal duty has been upheld in several other tort actions. *See, e.g., Roberts v. Bruns,* 387 N.W.2d 140, 143 (Iowa 1986); *Callahan,* 385 N.W.2d at 537–38; *Rittscher,* 352 N.W.2d at 251–52; *Smith,* 324 N.W.2d at 301–02. The district court did not err in ruling that plaintiffs' allegations of negligence failed to state a claim upon which any relief may be granted.

II. *Legal Sufficiency of Plaintiffs' Claims Based on 42 U.S.C. Section 1983.*

█ Plaintiffs assert that the petition states a claim that the State and its agencies, acting under color of state law, wrongly deprived them of interests in life, liberty and property protected under the fourteenth amendment to the federal constitution. Consequently, they assert that their petition states a valid claim for relief under 42 U.S.C. section 1983. The State urges that the motion to dismiss was properly granted as to plaintiffs' section 1983 claims as well as their negligence claims. We agree with the State's contention.

In *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the plaintiff sought recovery under section 1983 against California parole officials who had allegedly failed to follow state parole procedures with regard to an individual released from prison. That individual later killed the plaintiff's decedent. Plaintiff asserted in the section 1983 action that the actions of the parole officials deprived the decedent of life without due process. In concluding that no claim existed under section 1983, a unanimous Supreme Court stated:

> Although the decision to release Thomas [the paroled prisoner] from prison was action by the State, the action of Thomas five months later cannot be fairly characterized as state action. Regardless of whether, as a matter of state tort law, the parole board could be said either to have had a "duty" to avoid harm to his victim or have proximately caused her death, ... we hold that, taking these particular allegations as true, appellees did not "deprive" appellants' decedent of life within the meaning of the Fourteenth Amendment.

444 U.S. at 284–85, 100 S.Ct. at 559, 62 L.Ed.2d at 489. Other federal courts, relying on *Martinez,* have repeatedly denied relief under section 1983 to plaintiffs seeking recovery for harm caused to them by criminal activity claimed to have been preventable by the state. *See, e.g., Carlson v. Conklin,* 813 F.2d 769, 771–72 (6th Cir. 1987); *Jones v. Phyfer,* 761 F.2d 642, 644–45 (11th Cir.1985); *Wright v. City of Ozark,* 715 F.2d 1513, 1515 (11th Cir.1983); *Fox v. Custis,* 712 F.2d 84, 88 (4th Cir. 1983); *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982).

The district court acted correctly in sustaining the motion to dismiss on both the negligence claims and the claims based on alleged violations of 42 U.S.C. section 1983. The judgment of the district court is affirmed.

AFFIRMED.