584 A.2d 157

**WILLOW TREE LEARNING CENTER, INC.**

v.

**PRINCE GEORGE'S COUNTY, MARYLAND, et al.**

**No. 448, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 21, 1991.

■■■■■■■■■■■■■■■■
■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■

Michael J. Budow (Anne K. Howard, Douglas M. Gross and Budow and Noble, P.C., on the brief), Bethesda, for appellant.

Gabrielle M. Lynch, Associate County Atty. (Michael P. Whalen, County Atty. and Michael O. Connaughton, Deputy County Atty. on the brief), Upper Marlboro, for appellees.

Argued before GARRITY, ROSALYN B. BELL and CATHELL, JJ.

CATHELL, Judge.

Willow Tree Learning Center, Inc. ("Willow Tree") is a private day-care center located in Landover, Maryland. On July 20, 1987, 5–year–old Brian Vincent Sanders was fatally injured while using playground equipment on Willow Tree's premises.[1] Brian's parents filed a negligence action against Willow Tree in the Circuit Court for Prince George's County, Maryland. Willow Tree sought contribution and/or indemnification from Evelyn Hoban, a County employee who had inspected the play equipment, and Prince George's County, Hoban's employer.[2]

The Sanders settled with Willow Tree for $375,000 prior

---

**1.** Approximately 18 months before the accident, a ring had separated from the end of a play rope, and the Willow Tree staff had knotted the rope's end so that it would not fray. The rope was composed of several strands wound around each other, and with time, the strands had come unbraided above the knot. Brian apparently had inserted his head between the strands.

**2.** Willow Tree is thus a third-party plaintiff, and Hoban and the County are third-party defendants.

to trial.[3]  Prince George's County refused to settle, and filed a motion to dismiss, or in the alternative, for summary judgment (which was adopted by Hoban).  Willow Tree opposed Prince George's County's motion and filed its own cross-motion for summary judgment.  After oral argument, Judge Ahalt concluded that there were no disputes as to the material facts, granted the County's motion for summary judgment, and denied Willow Tree's cross-motion.  The trial judge adopted the County's memorandum as the court's opinion.  He thus included in his ruling, among other findings, that the County's inspection of Willow Tree was a governmental function arising out of the exercise of the County's police powers, and that the County health inspection creates no legal duty to the owner, operator, or user of the inspected premises, and there were no statutory provisions creating such a duty.

Willow Tree raises three issues on this appeal:

1.  Did the court below err in granting Prince George's County's and Evelyn Hoban's Motion for Summary Judgment on the issue of immunity?

2.  Is Willow Tree entitled to judgment as a matter of law on the issue of immunity?

3.  Did the court below err in granting Prince George's County and Evelyn Hoban's Motion for Summary Judgment on the issue of negligence where there are material facts in dispute?

The appellant discusses these three issues in two arguments.  In Argument I, it discusses the issue of governmental immunity; in Argument II, it contends that the judge erred in granting summary judgment, as there were material facts in dispute with respect to the issues of breach of duty, foreseeability, and proximate cause.  As we believe Judge Ahalt's grant of the appellees' Motion for Summary Judgment was proper in that no duty existed, we shall address that issue.

---

3.  As part of the settlement, Willow Tree preserved its right to proceed with its third-party complaint against Prince George's County.

I

## SUMMARY JUDGMENT

Maryland Rule 2–501(e) provides that:

> The court shall enter judgment in favor of or against the moving party if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

In reviewing a grant of summary judgment, we must first determine whether a dispute of material fact exists. *Arnold Developer, Inc. v. Collins*, 318 Md. 259, 262, 567 A.2d 949 (1990). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *Id.* at 261, 567 A.2d 949 (quoting *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985)). The record does not reveal any dispute as to the events surrounding Brian's death; the only difference between the parties involves the legal significance of those events. We conclude that summary judgment was appropriate under those circumstances. Our analysis, therefore, will first focus on the correctness of the judge's ruling that the defendants had no duty to the decedent.

II

## NEGLIGENCE

The basic elements of the tort of negligence are: (1) a duty or obligation which the defendant is under to protect the plaintiff from injury; (2) breach of that duty; and (3) actual loss or injury to the plaintiff proximately resulting from the breach. *Lamb v. Hopkins*, 303 Md. 236, 241, 492 A.2d 1297 (1985); *Scott v. Watson*, 278 Md. 160, 165, 359 A.2d 548 (1976); *State v. Baltimore Contracting Co.*, 177 Md. 1, 19, 6 A.2d 625 (1939); *Jones v. Maryland–National Capital Park & Planning Commission*, 82 Md.App. 314, 320, 571 A.2d 859 (1990); *Reilly v. Newman*, 74 Md.App.

281, 290–91, 536 A.2d 1230, *rev'd. in part on other grounds,* 314 Md. 364, 550 A.2d 959 (1988). The appellants contend that the defendants owed both a statutory and a legal duty to Willow Tree and the decedent. The Court of Appeals, speaking through Judge McSherry in *W. Va. Central R.R. v. Fuller,* 96 Md. 652, 666, 54 A. 669 (1903), stated:

> [T]here can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed. In every instance before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury.... As the duty owed varies with circumstances and with the relation to each other of the individuals concerned, so the alleged negligence varies, and the act complained of never amounts to negligence in law or in fact; if there has been no breach of duty.

Thus, the existence of a duty is the threshold question.

## A. STATUTORY DUTY

■ The Sanders argue that the frayed rope was a violation of applicable safety regulations,[4] and that under Md.

---

4. The issue of Willow Tree's liability for a statutory violation is not before us, as that party has settled with the plaintiffs. If it had not settled, and assuming that it had violated a statute, the standard to be applied was succinctly stated by Judge Bloom in *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 517 A.2d 1122 (1986):

> In Maryland, the violation of a statute does not constitute negligence *per se.* Rather, the breach of a statutory duty may be considered some evidence of negligence where three requirements are met. First, the plaintiff must be a member of the class of persons the statute was designed to protect. Second, the injury suffered must be of the type the statute was designed to prevent. Third, the plaintiff must present legally sufficient evidence to demonstrate that the statutory violation was the proximate cause of the injury sustained.

Regs.Code title 10, § .05.01.16 ("COMAR") and the Prince George's County Code, a duty was created on the part of the appellees to discover and report it. We disagree.

The public general statute in effect at the time of the accident, Md.Health–Gen.Code Ann. § 14–104 (1987 Repl. Vol.), provided that:

(a) ... The Secretary shall adopt rules and regulations for licensing and operating group day care centers.

(b) ... These rules and regulations shall:

(1) Ensure safe and sanitary conditions in group day care centers.

(2) Ensure proper care, protection, and supervision of children in group day care centers.[5]

Pursuant to the statute, the Secretary of Health promulgated COMAR 10.05.01, titled "Group Day Care Centers." Subsection 10.05.01.16 provides, in its entirety, that:

Each center shall have an outdoor playground providing ample play space that is free from hazards. The playground shall be appropriately equipped and readily accessible to the center. The outdoor play area shall be fenced when deemed necessary by the local health officer.

The only County ordinance directly concerning the safety of the play equipment at Willow Tree, of which we are aware, states:

The playground shall be sanitary, accessible to the facility and properly free from conditions likely to endanger the life or health of children.

---

*Id.* at 362, 517 A.2d 1122. (Citations omitted.) The same test applies to the violation of a County ordinance. *Paramount Development Corp. v. Hunter,* 249 Md. 188, 193, 238 A.2d 869 (1968).

5. By virtue of 1988 Md.Laws ch. 247, effective July 1, 1988, sections 14–101 through 14–116 of the Health–General Article were transferred to the Family Law Article. Md.Health–Gen.Code Ann. § 14–104 is now found, unchanged in relevant aspect, at Md.Fam.Law Code Ann. § 5–573 (1984 Repl.Vol and 1990 Cum.Supp.). The 1988 statute moved the provisions relating to children from the general provisions contained in Title 14 of the Health General article. Our holding as to the non-existence of a special relationship would apply under either statute.

Prince George's County Code, § 5–125(x) (1987). It is clear that the State and County legislation at issue here concerns the public safety and welfare. This protection extends to the children being kept in day care centers, the adults who are employed there, and the parents who enter the premises to deposit or pick up their children. Subsection (2) focuses on children, and reiterates the goal of safety. The County ordinance merely restates subsection (2). The position of the appellants, were we to adopt it, would result in the creation of a duty to inspect for all possible risks, and would effectively make the County and its inspectors liability insurers of day care centers in regard to the safety of children, parents, the center's adult employees, and guests, *i.e.,* the public.

We hold that the State or the County does not owe any individual duty of care merely by the enactment of a general ordinance requiring safety inspections, nor by the fact that it undertook inspections for safety violations. The duty created by the statute and ordinance was one owed to the public generally. We agree with the Court of Appeals of Arizona, when it said:

Absent statutory intention to the contrary, the duty to enforce statutory law is a duty owed to the public generally, the breach of which is not actionable on behalf of the private person suffering damage.

*Duran v. City of Tucson,* 20 Ariz.App. 22, 509 P.2d 1059, 1063 (1973).[6] There is a complete lack of any intention on

---

**6.** *See also Cady v. State,* 129 Ariz. 258, 630 P.2d 554 (App.1981) (A statutory duty to keep felons in custody imposes a duty to the public in general. A person who was abducted by an escaped convict is owed no individual duty where there was no proof of a course of conduct between that person and the State which would create an individual duty). *See, e.g., Stigler v. City of Chicago,* 48 Ill.2d 20, 268 N.E.2d 26 (1971) (Enforcement of housing code was a government function; city owed no duty to individuals living in buildings subject to the code); *Kirchgessner v. Tazewell County,* 162 Ill.App.3d 510, 114 Ill.Dec. 224, 516 N.E.2d 379, *cert. denied,* 119 Ill.2d 558, 119 Ill.Dec. 386, 522 N.E.2d 1245 (1988) (Animal shelter was created for the general public good and its operation is a discretionary action; there is no duty to individual members of the public who are injured

the part of the Legislature which would indicate that it was creating a duty to individual members of the public, and we will not create one. Our holding is in accord with the general reluctance of Maryland courts to infer this type of duty. For example, in *Lamb v. Hopkins*, 303 Md. 236, 492 A.2d 1297 (1985), the Court of Appeals was presented with the issue of whether a probation officer who fails to report a probationer's violations owes a duty to an individual injured by the probationer. The Court concluded, *inter alia*, that the statutory duty on the probation officers to notify the circuit court of any probation violations did not extend to notifying the general public. *See also Ashburn v. Anne Arundel County*, 306 Md. 617, 510 A.2d 1078 (1986); *Jones v. Maryland–National Capital Park & Planning Commission*, 82 Md.App. 314, 571 A.2d 859 (1990).

## LEGAL DUTY

■ The appellants assert that the County and its inspector owed a tort duty to the decedent. Two of the relevant

---

thereby); *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806 (Minn.1979) ("[M]unicipality does not owe any individual a duty of care merely by the fact that it enacts a general ordinance requiring fire code inspections.or by the fact that it undertakes an inspection for fire code violations. A duty of care arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class of persons from the risks associated with fire code violations."); *Halvorson v. Dahl*, 89 Wash.2d 673, 574 P.2d 1190, 1192 (1978) ("Traditional rule is that municipal ordinances impose a duty upon municipal officials which is owed to the *public* as a *whole*, so that a duty enforceable in tort is not owed to any particular *individual*...." (Emphasis in original.))

*But see Adams v. State*, 555 P.2d 235, 241 (Alaska 1976) (The State owes a duty to individual even in the absence of a "special relationship"; therefore, the State is liable for negligence in performing fire safety inspections); *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132 (1976) (Any duty owed to the public generally is a duty owed to individual members of the public).

*Compare Brennan v. City of Eugene*, 285 Or. 401, 591 P.2d 719 (1979) (Municipality may be held liable for its employee's issuance of a taxicab license, as distinction between "public" and "private" duty is precluded by statute).

factors to consider in determining whether such a duty should be recognized are:

> [T]he nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent. *By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability.*

*Jacques v. First National Bank of Maryland,* 307 Md. 527, 534–35, 515 A.2d 756 (1986). (Footnote omitted, emphasis added.) *See also Village of Cross Keys Inc. v. U.S. Gypsum Co.,* 315 Md. 741, 556 A.2d 1126 (1989). Judge Cole, in *Ashburn,* discussed foreseeability and other relevant factors:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

> Perhaps among these the factor deemed most important is foreseeability. However, "foreseeability" must not be confused with "duty." The fact that a result may be foreseeable does not itself impose a duty in negligence terms. This principle is apparent in the acceptance by most jurisdictions and by this Court of the general rule that there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a "special

relationship" exists either between the actor and the third person or between the actor and the person injured. *Ashburn*, [306 Md.] at 627–28, 510 A.2d 1078 (quoting *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 434, 131 Cal.Rptr. 14, 22, 551 P.2d 334, 342 (1976)). (Citations omitted.) It is thus evident that no tort duty will exist between a county and a citizen absent a special relationship.

The appellants argue that a special relationship was created between them and the County in three ways. The first way, they contend, was by the County's action in licensing, regulating, and inspecting the day care center to ensure the safety of the attending children, who relied on this act by using the playground. The standard explicated in *Ashburn* is that:

> In order for a special relationship between police officer and victim to be found, it must be shown that the local government or the police officer affirmatively acted to protect the specific victim or a specific group of individuals like the victim, thereby inducing the victim's specific reliance upon the police protection.

*Id.* [306 Md.] at 631, 510 A.2d 1078. We do not believe that the County was affirmatively and specifically acting to protect Brian individually or the other Willow Tree children.[7] The statute and the inspection program conducted pursuant to it were intended to protect children generally, as well as others, throughout day care centers in the County.

The second way that the appellants allege that a special relationship was formed is by the enactment of the statute, mandating inspections intended to protect children in the day care center. *Ashburn*, at 635, 510 A.2d 1078, held that a statute aimed at protecting the safety of the public "must 'set forth mandatory acts clearly for the protection of a *particular class* of persons rather than the public as a

---

7. We do not necessarily hold that a statute directed at a specific facility would, or would not, create a special relationship.

whole.' " (Quoting *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 807 (1979)). (Emphasis in original.) The statute at issue here does not contain requirements for mandatory acts for the specific protection of a particular class of person, *i.e.,* the Willow Tree children.[8]

█ The appellant's third argument concerning special duty is that the County, by its adoption of an inspection program, "voluntarily assumed a special relationship with the particular class made up of daycare students." The answer to this is that § 14–104 made compliance mandatory, not voluntary, and the protected class is not a "particular class" within the meaning of the special relationship doctrine. The Sanders also assert that a special relationship between Willow Tree and the County was created by the inspections. We do not believe that a special relationship, creating a tortious duty, is created by a governmental decision to legislate safety programs in a particular industry, unless that duty is expressly created by the statute. This is in accord with the majority of the cases we have reviewed from other jurisdictions. As far as we can discern, there are no Maryland cases to the contrary. We hold

---

**8.** We do not infer that "children" as mentioned in a statute could constitute a *particular class,* in and of themselves. We see little difference in "children" as contemplated by this statute and patients in various health care facilities, residents of various homes, customers of food processing facilities, persons who purchase flammable items, those subject to fire safety inspections, miners, customers of barber shops and beauty salons, students, employees, borrowers, construction workers, etc., and others who may benefit from Maryland regulatory statutes.

We note that according to the Maryland Department of Human Resources there are 159 licensed child care centers and 1,423 registered family day care centers in Prince George's County. Their total capacity is 16,659 children. Statewide, there are 11,736 such facilities with a capacity of 121,829 children. *Child Care Administration,* Department of Human Resources (Oct.1990). Health care hospitals regulated by the State total 86 facilities with inpatient bed capacity totaling 19,904 beds. *Directory of Acute General Hospitals, Special Hospitals and Special Rehabilitation Hospitals,* Maryland State Department of Health and Mental Hygiene (1990). Persons affected by other particular regulatory actions of government may well be as numerous.

that no special relationship existed between Willow Tree and the County.

Over the years, the General Assembly has enacted numerous statutes creating regulatory programs for the purpose of insuring the health, safety, and well-being of the public in general. Many of those statutes mandate or permit inspection programs. For example, the Health–General article of the Maryland Code provides for the inspection of inpatient mental health facilities, private group homes, day care centers for the elderly, medical laboratories, hospitals, home health agencies, foster homes, comprehensive rehabilitation facilities and nursing homes, food and drug manufacturing and storage facilities, milk production facilities, child restraint packaging facilities, flammable product manufacturing facilities, hazardous material storage, nuclear material facilities, facilities for the storage of exotic birds, and bedding storage or manufacturing facilities. Provisions found in the Business Occupations and Professions article of the Maryland Code provide for the inspection of barber shops and beauty salons. The Commercial Law article provides for inspection in respect to securities. The Environmental article provides for noise inspections, hazardous material inspections, inspections of sewage sludge utilization sites, and nuisance abatement inspections, and inspections by a county health officer for any unhealthy conditions in schools, business places, and places of employment. The Education article requires that all schools be inspected for asbestos, the Financial Institution article requires periodic inspections of secondary loan entities and entities issuing travelers checks, and the Natural Resources article requires inspection of strip mining and mine reclamations.

Additional provisions of the Code mandate or permit the inspection of scaffolding, boilers, natural gas facilities, water system adequacy, wastewater treatment facilities, and fire hazards. The Maryland Occupational Safety and Health Act (MOSHA) provides for the inspection of facto-

ries, plants, establishments, construction sites, work places, places of employment, and work environments.

Local governments throughout Maryland have enacted, or have the power to enact, legislation which incorporates inspection features. This type of local legislation includes building codes, housing codes, fire inspection codes, nuisance regulations, cemetery regulations, the handling of explosive materials, the regulation of the manufacture of soap and other fertilizer and other noxious things, regulation of slaughter houses, packing houses, offensive trades, the inspection of gas pipes, water pipes, plumbing apparatus, electric lines, drainage and sewer systems, sidewalks, and junk yards. There may well be statutes or regulations that require the retrofitting of structures to incorporate smoke detection devices, sprinkler devices, handicap facilities, etc. Such statutes would by implication require inspection to insure compliance.

The Maryland Code also requires or permits inspections as to the qualifications of applicants for licensing in respect to at least the following occupations: sanitarians, social workers, psychologists, counselors, podiatrists, medical doctors, lawyers, dietitians, occupational and physical therapists, dentists, pharmacists, foresters, architects and landscape architects, accountants, realtors, barbers and beauticians, hearing aid dealers, maritime pilots, plumbers, private detectives, engineers, surveyors, and others.[9]

---

9. This listing of inspection and licensing functions is but a cursory listing of some applicable provisions contained in the Code. These provisions, not in the order of the listing above, are found in the following sections: Business Occupations and Professions article § 4–522, 5–521; Commercial Law article § 13–201 *et seq.;* Corporations and Associations article, § 11–701; Environmental article § 3–401 *et seq.,* § 7–106 –107, § 7–245; §§ 9–243, 9–255, 10–201, 10–202; Education article § 7–418; Financial Institutions article §§ 11–214, 7–102, 12–314, 12–419; Health–General article §§ 7–617, 7–009, 10–509, 14–304, 17–202, 17–402, 19–308, 19–407, 19–1301, 19–1403, 20–302, 20–306, 21–225, 21–249, 21–313, 21–323, 21–413, 22–312, 24–403, 22–506, 24–108; Natural Resources article §§ 7–6A–25, 7–6A–27, 7–507, article 48, § 176, art. 78, § 64B, art. 89, § 30, art. 89, § 28 *et seq.* (MOSHA); Md.Code arts. 23 and 25.

In sum, virtually every citizen or visitor to this State has contact on a daily basis with an entity that is subject to governmental health and safety inspections. To hold that the inspection in the case *sub judice* creates special relationships and duties giving rise to the right to sue the County might well extend far beyond the specific ramifications of the case at bar.

■  We perceive a clarity of legislative purpose from the profusion of regulation and inspection provisions that the legislature has created. That purpose, as often stated in the statutory provisions themselves, is to insure the health and safety of the people of Maryland. A proliferation of suits and judgments resulting therefrom against the State and/or local governments based upon duties or special relationships, perceived by the litigants to have been created to run to them personally, as opposed to the public generally, might well cause the legislative branch to pause and reconsider the feasibility of continuing this type of regulatory activity. Any cessation or suspension of the Legislature's willingness to protect its citizens, we believe, would be disproportionately injurious to the public in general. The creation of causes of action arising out of statutory schemes of regulations and inspections is a matter of policy and should be addressed, if at all, by the Legislature. It is not the function of the judiciary to make policy of this type. Absent an explicit statement in a statute creating that type of duty, we do not believe that courts should draft them into a statute by implication. We hold, specifically in reference to the present statute, that no such duty nor special relationship expressly or impliedly exists. There being no duty, there can be no breach of duty and thus no actionable negligence. In light of our holding, we need not address the remaining issues.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.